In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2567

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY MAHALICK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 357—**Joan B. Gottschall**, *Judge.*

ARGUED APRIL 4, 2007—DECIDED AUGUST 13, 2007

Before KANNE, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Jeffrey Mahalick, a convicted felon, directed his girlfriend to buy a gun and ammunition, which he kept for several months and then sold to a fellow gang member. After he was caught and charged with various firearms offenses, he gave his side of the story to an agent of the Bureau of Alcohol, Tobacco, and Firearms. According to Mahalick, his girlfriend bought the gun for protection because a woman had recently been assaulted in their building, and because a prowler (called "the nightcrawler") had been attacking people in their neighborhood. The ATF agent made out a report noting that Mahalick said that the gun was for the couple's mutual protection, but did not write down anything

about the nightcrawler. At trial, however, the agent testified that Mahalick had said something about the nightcrawler.

Mahalick perceived in this late revelation several different types of prosecutorial misconduct—most notably, a failure to disclose material, exculpatory evidence under *Brady v. Maryland*—and after he was found guilty by a jury, moved for a new trial. The district court denied the motion and sentenced Mahalick to 92 months' imprisonment. Mahalick appeals the denial of his motion for a new trial and also challenges the application of a four-point sentencing enhancement for transferring the gun with reason to believe it would be used in a felony. Finding no error, we affirm.

## I. BACKGROUND

Mahalick's girlfriend, Tiffany Ollie, testified that Mahalick badgered her several times in the spring of 2003 about getting a gun for safety reasons. She always said that she felt safe enough, but Mahalick pressed ahead, filling out an application for a Firearm Owner's Identification card on her behalf, instructing her to sign it, and taking her shopping for pistols at a sporting goods store. In July 2003, after he found the gun he wanted, Mahalick filled out a Firearms Transaction Record Form and directed Ollie to sign it, hand it in to the clerk, and put down a deposit on the gun. Later, the couple returned and she completed payment while Mahalick waited in the car; she brought the gun back to him and it disappeared in the waistband of his pants, where he wore it for several months. Ollie testified that she never touched the gun again. A few days later, Mahalick directed Ollie to buy bullets.

Several months after that, Mahalick met with Samuel Foster, his former prison cell mate and a fellow member of

the Gangster Disciples street gang. Foster, who, like Ollie, testified for the government, admired Mahalick's gun and asked if Mahalick could get one for him. Mahalick refused but offered to buy Foster bullets, which he again accomplished through Ollie. Later Mahalick offered to sell his own pistol to Foster. Although Foster initially offered an eight ball of crack cocaine plus $100 cash, the two eventually agreed on an even $200. The sale took place in a restaurant parking lot. Several weeks later, Foster was involved in a shootout after he attempted to collect a debt. He was found holding the gun after having been shot four times. During cross-examination, the defense characterized this incident as an "armed robbery." Although Mahalick did not testify at trial, his lawyer argued in opening statements that Foster had actually stolen the gun from Ollie.

Mahalick was arrested, and after Detective Dave Jackson gave him *Miranda* warnings, ATF Special Agent Amy Conway interviewed him at a Joliet, Illinois police station. Conway testified that Mahalick explained that the gun was for mutual protection. The conversation was recorded, but Conway accidentally erased the tape while trying to make a copy of it. (She sent the ruined tape to the FBI's forensic lab in Virginia, but to no avail.) Mahalick was indicted on one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), one count of causing a false statement to be made regarding a straw purchase of a firearm, *id*. § 924(a)(1)(A), and two counts of selling guns or ammunition to a convicted felon, *id*. § 922(d)(1). A jury found him guilty on all four counts, and the district court denied his motion for a new trial. This appeal followed.

## II.  ANALYSIS

Mahalick devotes the majority of his brief to challenging the denial of his motion for a new trial. We therefore

review that decision before turning to the sentencing enhancement.

## A. Motion for new trial

In a somewhat strange *Brady* argument, Mahalick first contends that the government violated his right to a fair trial by withholding material and favorable evidence. He claims that he told Special Agent Conway about the nightcrawler during his interview. Although Conway noted in her report that Mahalick wanted the gun for his and Ollie's "mutual protection," she did not mention from what until cross-examination—and the government didn't remind Mahalick that he had told her it was from the nightcrawler. Mahalick says this disrupted his trial strategy because he didn't realize until Conway was on the stand that her testimony would corroborate his account. By that point, he contends, it was too late for the information to be of any use to him (even though it still left him time to decide whether to testify).

The government violates the rule set out in *Brady v. Maryland*, 373 U.S. 83 (1963), when it deliberately or inadvertently withholds evidence that is material and favorable to the defense. *See United States v. Wilson*, 481 F.3d 475, 480 (7th Cir. 2007). But there was no *Brady* violation here.

There are many problems with Mahalick's argument, and we will discuss only the two most significant. First, the government cannot be said to have suppressed evidence of what the defendant himself said, "because the defendant[ ], being part[y] to the conversation, [was] equally aware. *Brady* requires disclosure only of exculpatory material known to the government *but not to the defendant*." *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005) (emphasis added); *Fullwood v. Lee*, 290

F.3d 663, 686 (4th Cir. 2002). Mahalick is essentially arguing that the government had a duty to tell him what he had told Conway during their interview. But Mahalick knows what he said, and if he forgot (and there is no indication that he did), it was not the government's job to remind him.

Equally damning to the *Brady* argument, the allegedly withheld evidence is not exculpatory or otherwise helpful to Mahalick. Assuming that Ollie really did buy the gun for the couple's mutual protection in fear of the nightcrawler, in these circumstances that would not be a defense to the crime of possessing a handgun as a felon. Courts, including this court, have recognized in this context a defense of justification, which encompasses duress, necessity, and self-defense. *See, e.g., United States v. Wheeler*, 800 F.2d 100, 107 (7th Cir. 1986), *overruled on other grounds by United States v. Splendorio*, 830 F.2d 1382, 1393 (7th Cir. 1987); *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990); *United States v. Agard*, 605 F.2d 665, 667 (2d Cir. 1979). But it is a rare defense, for "[i]f ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters." *See United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996). In practice, the defense has only applied to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself, *United States v. Panter*, 688 F.2d 268, 271-72 (5th Cir. 1982), or to another, *United States v. Newcomb*, 6 F.3d 1129, 1138 (6th Cir. 1993); *United States v. Paolello*, 951 F.2d 537, 542 (3d Cir. 1991). *See generally Perez*, 86 F.3d at 736-37.

A key feature of the defense is immediacy. In *Panter*, for instance, the defendant was attacked and stabbed in a bar by a convicted murderer out on bond pending his appeal. The defendant grabbed a gun from the bar in order

to save himself. He faced an imminent threat of bodily harm, and had no recourse to lawful action, for if he had waited for the police, he would have been stabbed to death before help arrived. *Panter*, 688 F.2d at 269. The defendant's brief possession of the gun therefore outweighed the greater evil of his being murdered. The requirements of an imminent threat and a lack of recourse to lawful action mean that the defense does not apply if there is a way to avoid committing the felony of possession by a felon. *See Perez*, 86 F.3d at 737 (felon who mistook under-cover surveillance team for robbers not allowed to take pistol with him for protection on the way to the bank); *see also United States v. Salgado-Ocampo*, 159 F.3d 322, 326-27 (7th Cir. 1998) (felon who was threatened over the phone by individuals saying they would come kill him could have fled or contacted authorities rather than arming himself). Mahalick, who harbored only a general fear of living in a dangerous neighborhood, faced neither an imminent threat nor a lack of lawful options. Convicted felons are not allowed to keep a gun under the bed in the event something bad happens. We note in this regard that the nightcrawler was actually apprehended a month before Ollie bought the gun, which further undercuts Mahalick's claim to fear imminent harm—and his claim that his mention of the nightcrawler bears any relevance at all.

In addition to his *Brady* argument, Mahalick raised two points in his motion for a new trial, and again urges them on appeal. Neither requires much discussion. He first contends that Special Agent Conway misled the grand jury by failing to disclose "exculpatory" evidence— Mahalick's mention of the nightcrawler to her. But as shown above, this was not exculpatory evidence, and in any event, the grand jury is an accusatory, rather than an adjudicatory, body, and so the disclosure of exculpatory evidence is not required. *United States v. Williams*, 504

U.S. 36, 51-54 (1992); *United States v. Jarrett*, 447 F.3d 520, 529-30 (7th Cir. 2006). Second, Mahalick claims that the government suborned perjury by directing Detective Jackson—the other officer present during the interview—to testify falsely at trial. (Jackson testified that Mahalick did not mention the nightcrawler, whereas Conway testified that he did.) This is a serious accusation, and one too lightly made by defense counsel in this case. Mahalick has no evidence whatsoever of prosecutorial misconduct or perjury, and simply contends that since Jackson and Conway remembered the interview somewhat differently a year and a half after it took place, the government must have interfered. But it takes more than two witnesses' differing recollections to sustain a perjury charge. *See United States v. Chaplin*, 25 F.3d 1373, 1377 (7th Cir. 1994). The district court did not abuse its discretion when it denied the motion for a new trial.

## B. Sentencing

Mahalick also challenges the district court's imposition of a four-point enhancement under U.S.S.G. § 2K2.1(b)(5).[1] That provision calls for an enhanced sentence if the defendant "transferred any firearm or ammunition with . . . reason to believe that it would be used or possessed in connection with another felony offense." We review the district court's finding for clear error. *United States v. Caldwell*, 423 F.3d 754, 761-62 (7th Cir. 2005).

Mahalick first argues that there was no evidence that he had reason to believe that the gun he sold to Foster would be used in another felony offense. We note that the "[ ]other felony offense" cannot simply be that the

---

[1] Mahalick was sentenced under the 2005 version of the Guidelines. The enhancement now appears at § 2K2.1(b)(6).

buyer was a felon and upon purchasing the gun became a felon in possession of a firearm. *See id.* cmt. n.15. But here Foster actually attempted an armed robbery with the gun that he bought from Mahalick. That fact does not, of course, shed light on whether at the time he sold the gun Mahalick had reason to believe that it would be used in a felony. *See United States v. Cicirello*, 301 F.3d 135, 141 (3d Cir. 2002). But it was certainly foreseeable. Mahalick sold the gun to a gang member, which in itself may be enough to hold that the district court did not clearly err. *See United States v. Jemison*, 237 F.3d 911, 918 (7th Cir. 2001); *United States v. Messino*, 55 F.3d 1241, 1255-56 (7th Cir. 1995); *see also United States v. Molloy*, 324 F.3d 35, 39-40 (1st Cir. 2003). But that's not all. Foster offered to pay Mahalick in crack, which shows Foster's propensity to commit crimes. *See United States v. Wagner*, 467 F.3d 1085, 1089 (7th Cir. 2006) (sales of guns in return for cocaine indicates awareness that guns will be used in felonies). Indeed, Foster was a convicted felon, and had done drugs with Mahalick and committed acts of violence in his presence. The district court noted many of these points, stating:

> [T]here is absolutely no way to imagine that Samuel Foster had a licit use for this gun. He's a bad actor, and he's a street guy and a gang member, and he does crimes. At a minimum, he was going to have that gun with him somewhere where he wasn't supposed to have the gun with him.

The district court did not clearly err in concluding that Mahalick had reason to believe the gun would be used in a felony.

Mahalick also argues that since he was convicted under 18 U.S.C. § 922(d)(1) of selling a gun to a felon, the district court engaged in impermissible double counting by imposing the U.S.S.G. § 2K2.1(b)(5) enhancement for

transferring a gun with reason to believe that it would be used in a felony. The two provisions do cover similar ground, for although selling *to a felon* and selling *to one who will commit a felony* are not exactly the same, felons are more likely to make illegal use of guns, and so Congress passed § 922(g) in order to keep guns out of their hands. *See Ball v. United States*, 470 U.S. 856, 862-63 (1985); *United States v. Lane*, 252 F.3d 905, 906 (7th Cir. 2001).

But even assuming for argument's sake that the substantive offense and the enhancement do punish the same behavior, Mahalick's four counts of conviction were grouped under U.S.S.G. § 3D1.2(d) in such a way as to overcome any fears of double counting. According to the introductory commentary to Chapter 3, Part D of the Guidelines, one of the key purposes of grouping is "to prevent multiple punishment for substantially identical offense conduct."

When courts group several counts to which different guidelines apply, they calculate the base offense level using the count that would produce the highest offense level. The other counts essentially fall away for sentencing purposes. *See* § 3D1.3(b).[2] This prevents any double counting between one of several substantive offenses and an enhancement that punishes similar conduct. *See United States v. Taylor*, 248 F.3d 506, 517 (6th Cir. 2001); *United States v. Smith*, 196 F.3d 1034, 1036-37 (9th Cir.

---

[2] "In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply, apply the offense guideline that produces the highest offense level."

1999). For example, in *United States v. Taylor*, the defendant was convicted of being a felon in possession of a firearm and of drug crimes, and he received a sentencing enhancement for using the gun during the drug crimes. On appeal, he claimed that the enhancement double counted his firearms offense. But the firearm and drug crimes were grouped for sentencing, and since the drug counts carried the higher offense level, the district court "effectively disregarded" the firearms offense in calculating the sentence. 248 F.3d at 517. Therefore any overlap between the firearm offense and the firearm enhancement had no impact on the sentence. *Id.*

A similar result obtains here, even though Mahalick's firearms offenses all fall under the same guideline, § 2K2.1. He was charged with several offenses, including possession of a firearm by a felon and selling a gun to another felon. But each offense carried the same base offense level of 20, and the enhancement would only double count the offense of selling a gun to a felon. The district court therefore only needed to pick one of the other offenses to form the base level. Since all the substantive offenses carried the same level, they were essentially interchangeable. *Cf. United States v. Massey*, 48 F.3d 1560, 1568-69 (10th Cir. 1995) (affirming sentence where one count produced *ex post facto* problem but other count did not and resulted in the same base offense level). Had Mahalick only been convicted of being a felon in possession, his sentence would be exactly the same and the enhancement would apply without any problem.

Now, if Mahalick had been charged with multiple gun sales—say, selling six guns to person X under count one, and two guns to person Y under count two for a total of eight guns—then the number of guns would have been aggregated to come up with a base offense level. *See* U.S.S.G. § 3D1.3(b). In that situation, it would be inaccurate to say that a count could fall out because the

aggregate quantity involved in all the counts would determine the sentence. *See id.* § 2K2.1(b)(1). Here, however, as the district court found, Mahalick's count for selling the gun to a felon did not extend his base offense level, which would have been the same using all of his counts as it would have been using any one count. The district court therefore stated that it would consider the felon-in-possession charge as the substantive offense for calculating the base offense level. Since the enhancement did not overlap with that offense, Mahalick was not punished twice for the same behavior.

### III. CONCLUSION

For the reasons stated, we AFFIRM Mahalick's conviction and sentence.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*