In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1277

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARCUS KILGORE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08-CR-38-C-01—**Barbara B. Crabb**, *Chief Judge*.

ARGUED SEPTEMBER 16, 2009—DECIDED JANUARY 8, 2010

Before CUDAHY, WOOD, and SYKES, *Circuit Judges*.

CUDAHY, *Circuit Judge*. In 2008, Marcus Kilgore pleaded guilty to a one-count indictment of unlawfully possessing a firearm and ammunition as a convicted felon. *See* 18 U.S.C. § 922(g)(1). Before the presentence investigation report was filed, Kilgore moved to withdraw his guilty plea, claiming that his possession of the loaded firearm was legally justified. The district court denied his motion and subsequently sentenced him to 92 months in prison,

which was at the bottom of the relevant Advisory Guide-
lines range. On appeal, Kilgore contends that the dis-
trict court erred in finding that he could not present a
justification defense had he gone to trial. He also
contends that the district court abused its discretion in
denying his request for a downward variance under
18 U.S.C. § 3553(a). Because the undisputed facts
preclude the applicability of a justification defense, and
because the sentence imposed by the district court was
reasonable, we affirm.

## I. BACKGROUND

In the early hours of January 30, 2008, Marcus Kilgore
("Kilgore") and his brother, Prentice, drove to meet
Edward Newsom in Madison, Wisconsin to purchase
Ecstasy. After Newsom and his colleague, Danny Turner,
arrived, Kilgore's brother approached them and got into
their vehicle. Something clearly went awry. A struggle
ensued, which ended with Prentice shooting Turner as
the latter began to run away. Prentice got back into his
brother's car and, with Kilgore driving, they made
their escape.

The two brothers drove to the apartment of Jessie
Pennington, which was also in Madison. Pennington, who
is the mother of Prentice's children, had several people
in the apartment when Kilgore and Prentice arrived. This
group included minor children. Prentice, who was
drunk, sat down on the sofa and, in the process, managed
to shoot himself in the leg. Kilgore took the gun from his
injured brother, observed that two empty shell casings

resided in the revolver's cylinder and emptied the gun, except for two live rounds. He then kept the gun within his sight or in his actual possession for at least an hour. During that time, he attempted to persuade Prentice to go to the hospital and made a number of calls to people with medical experience who might be able to help.

Eventually, Prentice relented and agreed to go to the hospital. Kilgore picked up the gun before leaving and carried it outside the apartment. What happened next is the subject of some dispute. Kilgore contends that he gave the revolver to Pennington, who threw it in a snowbank. According to Pennington, Kilgore threw the gun away. Under both accounts, though, Kilgore carried the revolver out of the apartment and the gun ended up in the snowbank, where it was discovered a few hours later by a citizen who called the police.

On March 12, 2008, Kilgore was charged in a one-count indictment with unlawfully possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On June 12, 2008, Kilgore reluctantly entered a guilty plea, pursuant to a written plea agreement. On July 17, 2008, before the presentence investigation report was filed, Kilgore filed a motion to withdraw his guilty plea, claiming that his possession of the gun was legally justified.

On December 17, 2008, the district court denied Kilgore's motion, finding that his decision to plead guilty rather than go to trial on a justification defense was objectively reasonable. Given that Kilgore failed to avail himself of a number of options that did not require his

possessing the gun, the court found that the facts would not allow such an affirmative defense.

On January 9, 2009, Kilgore was sentenced to 92 months' imprisonment, which was at the bottom of the relevant Guidelines range. The district court declined Kilgore's request for a downward adjustment under 18 U.S.C. § 3553(a). In doing so, it rejected Kilgore's contention that he was acting out of concern for other people. Rather, the court believed that his actions were designed to prevent law enforcement from learning of the gun and the apparently criminal ends to which it had been employed.

## II. DISCUSSION

Kilgore filed a timely appeal in which he makes two arguments. He first contends that the district court erred in finding that he was not entitled to raise a justification defense at trial. He also maintains that the district court abused its discretion in denying him a downward adjustment for his purportedly praiseworthy behavior.

We review the legal sufficiency of a proffered defense de novo because it entails a question of law rather than fact. *See United States v. Sahakian*, 453 F.3d 905, 909 (7th Cir. 2006); *United States v. Simmons*, 215 F.3d 737, 741 (7th Cir. 2000). However, we review factual determinations relied upon by the district court for clear error. *See Simmons*, 215 F.3d at 741.

We review sentences for reasonableness in light of the statutory factors provided by 18 U.S.C. § 3553(a). *See United*

*States v. Padilla*, 520 F.3d 766, 771 (7th Cir. 2008). We presume that a sentence within a correctly calculated Guidelines range is reasonable. *See United States v. Panaigua-Verdugo*, 537 F.3d 722, 727 (7th Cir. 2008). In determining a reasonable sentence, the district court need not comprehensively discuss all of the 18 U.S.C. § 3553(a) factors, but must explain its decision and address nonfrivolous sentencing arguments. *See United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

## A. Kilgore Cannot Avail of a Justification Defense

The defense of necessity in a criminal case is a narrow one. To prevail, a defendant must ordinarily establish that he faced an imminent threat of serious bodily injury or death and that he had no reasonable legal alternatives to avoid that threat. *Sahakian*, 453 F.3d at 909. As applied to the case of a felon in possession of a firearm, this Court has clarified that, "[i]n practice, the defense has only [been] applied to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself." *United States v. Mahalick*, 498 F.3d 475, 479 (7th Cir. 2007); *see also United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996) ("The defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened (the other might be the possessor of the gun, threatening suicide).").

Were Kilgore's possession of the gun limited to a momentary instance in which he dispossessed his drunk and injured brother of the weapon, the defense might have been available. But his possession was not so limited.

It is undisputed that Kilgore, after removing the revolver's shell casings, maintained the gun in his sight or possession for at least an hour and then took it outside the apartment. Kilgore cannot avail of the defense of necessity in these circumstances. *Mahalick* emphasized that "the defense does not apply if there is a way to avoid committing the felony of possession by a felon." *Id.* at 479; *see also Perez*, 86 F.3d at 737 (observing that a "defendant may not resort to criminal activity to protect himself or another if he has a legal means of averting the harm"). The district court aptly outlined a range of legal avenues that were open to Kilgore. *United States v. Kilgore*, 2008 WL 5272528, at *2 (W.D. Wis. Dec. 17, 2008). After taking the gun off his brother, he could have called the police. He could have given the firearm to a nonfelon adult. He could have put the revolver somewhere in the apartment that the children could not have reached. *Id.* Having eschewed these options, Kilgore cannot appeal to the defense of necessity.

In his brief, Kilgore portrays a chaotic scene in the apartment. He asserts that the ensuing maelstrom amounted to an ongoing emergency that justified his extended possession of the gun. He further submits that, because of his actions, no one else was hurt in what was potentially a dangerous situation. Finally, pointing us to the bedlam, he contends that his decisions cannot be

judged from the perspective of one making a calm and reflective judgment.

One might well imagine the scene to be chaotic after an accidental shooting in an apartment filled with children. But even if Kilgore's portrayal is accurate, he does not direct us to any case law that suggests that the defense of necessity is available, notwithstanding the lack of objective justification, when a defendant makes a mistaken good-faith judgment in the midst of a highly charged situation. Putting aside our skepticism over Kilgore's purported good faith in possessing the gun, the relevant case law makes clear that such subjectivity is largely irrelevant. *See United States v. Deleveaux*, 205 F.3d 1292, 1298 (11th Cir.), *cert. denied*, 530 U.S. 1264 (2000) (holding that under 18 U.S.C. § 922(g)(1) "[t]he prosecution need show only that the defendant consciously possessed what he knew to be a firearm").[1]

*Mahalick* provides that the necessity defense is a rare one and is unavailable in a setting where no ongoing emergency exists or where legal alternatives to

---

[1] The only conceivable exception relates to "innocent possession," which is a defense recognized by the D.C. Circuit, though not by other circuits. *Compare United States v. Mason*, 233 F.3d 619, 623-24 (D.C. Cir. 2000) *with, e.g., United States v. Johnson*, 459 F.3d 990, 995-98 (9th Cir. 2006). Although we have discussed its application in dicta, we have not previously recognized this defense. *See United States v. Hendricks*, 319 F.3d 993, 1007-08 (7th Cir. 2003) (citing *Mason*, 233 F.3d at 623-24). Even if we were now to adopt such an innocent possession defense, however, it would be inapplicable on these facts.

possession are available. 498 F.3d at 479. It makes no exception for circumstances where a defendant mistakenly believes that the law would allow her to possess a gun. This should not be surprising, since it is hornbook law that ignorance of the law is generally no defense. *See Cheek v. United States*, 498 U.S. 192, 199 (1991); *United States v. Wilson*, 159 F.3d 280, 288-89 (7th Cir. 1998).

In any event, Kilgore's assertedly noble motives were rejected by the district court, which found that his actions were motivated by a desire to conceal the gun, and its use in the morning's nefarious activities, from the police. *Kilgore*, 2008 WL 5272528, at *2. We adhere to the district court's factual determination unless it is clearly erroneous. Based on our review of the record, we find no basis for questioning the court's conclusion, let alone finding it to be clearly erroneous.

Because black-letter law forecloses the defense of necessity on the facts of the present case, the district court's determination to that effect was correct.

## B. The Sentence Imposed by the District Court Was Reasonable

Appealing once more to the tumultuous circumstances attendant upon his actions, Kilgore contends that the district court abused its discretion in declining to grant him a downward adjustment of his sentence. He does not claim that the district court erred in computing his Guideline range. Rather, he contests the reasonableness of the 92-month sentence he received, which was at the bottom of the Guidelines range.

Because the sentence imposed was within the Guidelines range, we presume that it is reasonable. *See Panaigua-Verdugo*, 537 F.3d at 727. To rebut this presumption, Kilgore must demonstrate that the sentence is unreasonable in light of 18 U.S.C. § 3553(a). *See United States v. Campos*, 541 F.3d 735, 750 (7th Cir. 2008).

Kilgore argues that his sentence was unreasonable because it did not adequately account for the chaotic circumstances in which he was forced to act. In his view, he should have received a below-Guidelines sentence.

The district court, however, considered and rejected Kilgore's argument that he acted in good faith and for the benefit of others. It opined that Kilgore's "actions are far more indicative of a person whose main interest is in preventing law enforcement from learning of the gun and the shots fired from it than of someone interested in protecting others." *United States v. Kilgore*, 2008 WL 5272528, at *2 (W.D. Wis. Dec. 17, 2008). This assessment strikes us as quite reasonable, particularly in light of the morning's events, in which the gun had been used to shoot a person during an attempted drug purchase. This inference is bolstered by Kilgore's actions in emptying the gun of the spent cartridges, but not the remaining two bullets.

It is true that the court omitted specific reference to the chaos described by Kilgore, other than to reject any suggestion that he acted under coercion or duress. But this omission, it seems to us, is based on the district court's disbelief of his account of events. In finding that Kilgore's actions were motivated by self-protection and a desire to obstruct law enforcement, the district court

necessarily rejected the contention that those actions were the result of an unthinking reaction to an emergency.

In addition to finding that Kilgore acted out of self-interest rather than for any altruistic reason, the district court addressed a number of factors that support the reasonableness of the sentence imposed. It noted that Kilgore, despite being only 23, had been in some form of custody or under court-ordered supervision for the majority of the previous decade and that he had six juvenile and eight adult convictions. It observed that his criminal behavior had become increasingly violent and that he was a significant danger to the community. And it expressed shock at the fact that his actions resulted in a loaded firearm's being left in a snowbank where any child could have happened upon it. It thus concluded:

> a sentence at the low end of the advisory guideline range is reasonable and necessary to hold you accountable for your actions, protect the community from further criminal activity on your part, provide you an opportunity to participate in rehabilitative programs, and to achieve parity with the sentences of similarly situated offenders.

In light of the district court's reasoned decision to impose a within-Guidelines sentence, we are reluctant to reject it. Kilgore's challenge is limited to the district court's purported failure to credit his account of the frenzied circumstances in which he had to act. For the reasons just explained, however, this challenge must fail.

### III. CONCLUSION

The district court was correct in finding that Kilgore could not avail himself of a justification defense, given the uncontested facts that he had possession of a loaded weapon for over an hour, failed to exhaust all legal avenues open to him and carried the gun outside the apartment. Moreover, the within-Guidelines sentence imposed by the court was reasonable. The judgment of conviction and sentence are

AFFIRMED.