NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 26, 2010
Decided June 21, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-3308

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | |
| | No. 07 CR 788-1 |
| MANILEN MENDOZA, | |
| *Defendant-Appellant*. | David H. Coar, *Judge*. |

**O R D E R**

Manilen Mendoza was convicted after a jury trial of three counts of filing a false income tax return. See 26 U.S.C. § 7206(1). The district court sentenced her to a total of 30 months' imprisonment, and Mendoza filed a notice of appeal. Her appointed counsel, however, now moves to withdraw because he has concluded that any appellate argument would be frivolous. See *Anders v. California*, 386 U.S. 738 (1967). Mendoza has not

responded to counsel's motion. See CIR. R. 51(b). We limit our review to the potential issues identified by counsel in his facially adequate brief. See *United States v. King*, 506 F.3d 532, 534 (7th Cir. 2007).

In November 2007 a grand jury returned an indictment charging that Mendoza had omitted more than $400,000 from the total income reported on line 22 of her Form 1040 individual returns for tax years 2004, 2005, and 2006. Mendoza claimed to be a concert promoter, and in 2005 she had incorporated Prestige Entertainment. She used Prestige to defraud people who invested in concerts by big-name artists, such as Stevie Wonder, Kenny Rogers, Lionel Richie, and Olivia Newton-John. In fact, Mendoza was converting those funds to her personal use. The California authorities caught up with her and charged her with theft. Before her federal trial began, she moved *in limine* to exclude this damaging evidence. The district court denied Mendoza's motion, and at trial the government called four witnesses who testified that Mendoza had lied to them when she persuaded them to invest in her concerts.

The government also called Steven Gambill, the certified public accountant who prepared Mendoza's returns for 2004 and 2005. Gambill testified that the information Mendoza gave him for her 2004 return was incomplete. Notably, it did not include the income that she purportedly received from her concert businesses. Gambill also testified that he helped Mendoza incorporate three companies, including Prestige, in November 2005, and he gave her a lecture on good accounting practices. She must not have listened carefully: when it came time to file tax returns for 2005, Mendoza told Gambill that Prestige and her other two companies had not been in operation and had not generated income. Throughout 2006, Gambill repeatedly reminded Mendoza that he would need income and expense records to prepare her individual and corporate tax returns for that year, but he never got them. Instead, Mendoza took her business to H&R Block and hired Danuta Kozlowski to prepare her 2006 individual return. Kozlowski testified that Mendoza reported receiving $20,000 in wages from Prestige, but she did not reveal that she was the only stockholder and had spent substantial amounts of its money on personal expenses.

The IRS revenue agent who analyzed Mendoza's bank records testified that Mendoza deposited checks totaling approximately $66,000 in 2004, $77,500 in 2005, and $275,000 in 2006. None of those funds were used in her concert business. Instead, Mendoza transferred the funds to relatives and spent lavishly on personal items. Other than her wages for 2006, Mendoza did not report any income from Prestige or other concert

promotion businesses for tax years 2004, 2005, or 2006, nor did Prestige or her other companies file income tax returns for these years.

Mendoza testified. She conceded that she had lied to her investors, that she kept their money, and that she did not report those funds on her tax returns. Her only defense was that she did not know that she was required to report the money. She testified that Gambill had instructed her that an individual return is distinct from a corporate return. Somehow she transformed that unexceptional piece of information into the idea that a corporation that is unprofitable does not have to file a return. Mendoza further contended that she did not defraud her investors because, she believed, they had provided money not for specific concerts but for the concert-promotion business as a whole. That business, she asserted, had incurred significant expenses during the years 2004 through 2006. To support her defense, she produced invoices, copies of checks, and several receipts dating from 2005 and 2006 that total about $100,000. These documents did not, however, account for the rest of the money Mendoza accepted from her investors, and she conceded that she used the Prestige debit card for personal purchases and did not segregate business and personal funds. The jury found Mendoza guilty on all three counts.

Counsel first considers whether Mendoza could argue that the government failed to prove that she willfully lied about her income. A conviction under § 7206(1) requires proof that the defendant willfully filed under penalty of perjury a return that she did "not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1); see *United States v. Pansier*, 576 F.3d 726, 736 (7th Cir. 2009). Counsel concludes that the evidence of willfulness is more than sufficient, and we agree. Mendoza never told either of her return preparers that she had used a substantial amount of her investors' money for personal expenses. Those funds—whether characterized as the proceeds of fraud or as money skimmed from a legitimate business—were income to Mendoza. See *United States v. Presbitero*, 569 F.3d 691, 700-01 (7th Cir. 2009); *United States v. Peters*, 153 F.3d 445, 460-62 (7th Cir. 1998). And her failure to disclose that income to Gambill or Kozlowski is evidence of willfulness. See *United States v. Powell*, 576 F.3d 482, 495 (7th Cir. 2009); *United States v. Useni*, 516 F.3d 634, 650 & n.10 (7th Cir. 2008). Mendoza's testimony that she spent the investors' money for business purposes cannot be squared with the IRS agent's analysis of her personal spending, and the illicit source of the unreported income is further evidence that Mendoza's omission was willful. See *Powell*, 576 F.3d at 495. Any challenge to the sufficiency of the evidence would be frivolous.

Counsel next evaluates a potential challenge under FED. R. EVID. 404(b) to the admission of evidence that Mendoza derived the unreported income through fraud. Rule 404(b) bars evidence of a defendant's other, uncharged bad acts to establish a propensity to commit crime. *United States v. Conner*, 583 F.3d 1011, 1021 (7th Cir. 2009). But the rule permits the admission of such evidence to establish a material issue like motive, intent, or knowledge, so long as the evidence pertains to events that were similar and close in time to the charged conduct, is sufficient to support a jury finding that the defendant committed the other bad act, and sufficiently probative to outweigh its possible prejudicial effect. *United States v. Johnson*, 584 F.3d 731, 736 (7th Cir. 2009); *United States v. Moore*, 531 F.3d 496, 499 (7th Cir. 2008).

We agree with counsel that it would be frivolous to challenge the admission of evidence about the source of Mendoza's unreported income. Four of her victims testified about her misrepresentations and their combined investments of more than $400,000 during 2004 through 2006. This evidence was relevant to show Mendoza's wilfulness. See *Powell*, 576 F.3d at 495; *United States v. Zizzo*, 120 F.3d 1338, 1355 (7th Cir. 1997); *United States v. Birkenstock*, 823 F.2d 1026, 1027-28 (7th Cir. 1987). The victims' testimony, combined with the testimony of the IRS revenue agent, was sufficient to support the jury's finding that Mendoza committed fraud. Finally, the district court instructed the jury that it could use the evidence "only to determine whether Manilen Mendoza willfully failed to include reportable income on her 2004, 2005, and 2006 tax returns," thereby alleviating any risk of undue prejudice. See *Moore*, 531 F.3d at 500. We would presume that the jury followed its instructions. See *United States v. Puckett*, 405 F.3d 589, 599 (7th Cir. 2005).

Counsel also considers a challenge based on the district court's warning that it would add a "missing witness" instruction to its jury charge if defense counsel continued to assert during his closing argument that the government had not refuted Mendoza's testimony that she used the investors' money to pay business expenses. The court warned counsel that it would instruct the jury that, "where witnesses are available to both parties, failure to call a witness is of no particular moment." See FEDERAL CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT § 3.24 (1999). Counsel suggests that this threat of a revision to the previously announced jury charge was contrary to FED. R. CRIM. P. 30(b), which provides that a trial judge must inform the parties *before* closing arguments how it intends to rule on requested jury instructions. But Rule 30 does not require the district court to inform counsel of every instruction before closing arguments, nor does the rule prohibit the court from supplementing the jury instructions to prevent the jury from

becoming confused or issuing a verdict on an improper basis. *United States v. Buishas*, 791 F.2d 1310, 1316 (7th Cir. 1986); *United States v. Shirley*, 435 F.2d 1076, 1078 (7th Cir. 1970). Moreover, the court ultimately did not give the instruction, and counsel has not identified any possible prejudice that the warning could have caused.

As for Mendoza's sentence, counsel evaluates and rejects as frivolous two potential challenges. The first is whether Mendoza could argue that under U.S.S.G. § 3D1.2 and § 5G1.3(b) the district court should have "grouped" her pending state charge for the fraud with the tax convictions to determine the guidelines range and then reduced the federal sentence by the 13 months that she had spent in state pretrial detention at the time of her federal sentencing. That argument would go nowhere. The grouping rules found in § 3D1.2 of the guidelines apply only to multiple counts of conviction within the same federal prosecution. See U.S.S.G. ch. 3 pt. D, introductory cmt. (2009); see also *United States v. Mahalick*, 498 F.3d 475, 481-82 (7th Cir. 2007). And § 5G1.3(b), which permits a sentencing court to adjust a federal sentence to account for any period of incarceration served on an "undischarged term of imprisonment" for a related crime, was likewise inapplicable: Mendoza had not been convicted in the California case and was not serving an undischarged term of imprisonment.

The second potential argument is whether the overall prison sentence is unreasonable. Mendoza's 30-month term falls squarely within the properly calculated guidelines range of 27 to 33 months and is presumptively reasonable. See *Rita v. United States*, 551 U.S. 338, 350-51 (2007); *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010). Counsel cannot identify any factor that would overcome that presumption, nor can we.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.