**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-4004

_____

UNITED STATES OF AMERICA,

v.

KEVIN JARREAU DUPREE,

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 08-cr-115)
District Judge: Joseph J. Farnan, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2010

_____

Before: BARRY, ROTH, Circuit Judges and HILLMAN,[*] District Judge

(Opinion Filed: July 30, 2010)

_____

OPINION

_____


HILLMAN, District Judge

_____

[*] Honorable Noel L. Hillman, United States District Judge for the District of New Jersey, sitting by designation.

Kevin Jarreau Dupree pled guilty to the straw purchase of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). As a result, he was sentenced to a term of twenty-four months imprisonment and three years of supervised release. Dupree appeals his sentence, specifically the District Court's application of a four-level sentencing enhancement. For the following reasons, we will affirm.

## I. Background

On March 26, 2008, Dupree purchased a Glock Model 22, .40 caliber semiautomatic pistol, ammunition, and an extra magazine from a licensed firearms dealer in Newark, Delaware. Although he informed the dealer that he was purchasing the gun for his own use, Dupree actually obtained the firearm for his cousin, Curtis Boyd.

Less than a month later, on April 19, 2008, Dupree, Boyd, and another individual, Andrew Reddick, traveled in a stolen car to New Jersey, where they intended to commit burglaries. According to Reddick, at their final stop, Boyd found, stole, and drove away in another car while Dupree continued to drive the first one. Later, Boyd and Dupree switched cars.

While in New Jersey, State troopers pursued the two vehicles in a high-speed chase. Dupree and Reddick managed to elude the authorities and return to Delaware. During the pursuit, however, Boyd's vehicle became disabled. Upon exiting the car, Boyd struggled with two troopers, with whom he exchanged gunfire. The two troopers were injured, and Boyd was shot and killed. From Boyd's person, the troopers recovered the firearm that Dupree had purchased and given to Boyd.

During the course of their investigation, the police were able to eventually locate and arrest Reddick and Dupree.[1] While in custody, Dupree was interviewed by law enforcement officials. Dupree admitted that he had bought the recovered firearm for Boyd. According to Dupree, he purchased the handgun to settle a debt he owed Boyd for marijuana he had received from him.[2] To offset the debt, Dupree recalled, Boyd supplied him with money and directed him to purchase a .40 caliber pistol and a box of ammunition – an instruction with which Dupree complied. Moreover, according to the police report and as memorialized in his pre-sentence report, Dupree acknowledged that he knew that Boyd could not legally purchase a firearm.

On the basis of his purchase of the .40 caliber semiautomatic pistol, Dupree was indicted in the District of Delaware on one count of making a false statement to a licensed firearms dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). On June 4, 2009, Dupree entered, and the District Court accepted, a guilty plea to that charge.

At sentencing, on September 21, 2009, the District Court, adopting the pre-sentence report, calculated a total offense level of 15, a criminal history category of II, and a sentencing range of 21 to 27 months under the United States Sentencing Guidelines. As part of its calculation, the District Court applied a four-level specific offense

---

[1] With respect to his actions in New Jersey, Dupree pled guilty to one count of eluding police.

[2] Dupree later recanted this assertion, but admitted that, as a result of the purchase, Boyd forgave a debt he owed.

characteristic found in Section 2K2.1(b)(6) of the Sentencing Guidelines.[3]  Overruling

Dupree's objection to this enhancement,[4] the District Court explained:

> First, with regard to the four level enhancement, I make the specific finding that Mr. Dupree had reason to believe that the gun that he was purchasing for Mr. Boyd would be at a minimum possessed by Mr. Boyd in connection with another felony offense.
>
> Specifically, I find the felony offense that was possible, or Mr. Dupree would have reason to have believed are drug and theft felonies.
>
> I base this on the conviction that Mr. Dupree obtained back when he was found with Mr. Boyd and another in Newark, Delaware, in a situation where there were charges of intent to distribute and other charges, and Mr. Dupree individually worked himself out of those charges by pleading to possession of drug paraphernalia.[5]
>
> . . . .
>
> I further find that this is an appropriate enhancement because of the history as I said of Mr. Dupree and Mr. Boyd.
>
> Although, Mr. Dupree initially said that this gun transaction, straw purchase he was embarked upon because there was some debt that he owed to Mr. Boyd.

---

[3] As explained more fully below, this enhancement may apply if the defendant knows, intends, or has reason to believe, that the transferred weapon will be used or possessed in connection with another felony offense.

[4] Dupree also objected to the inclusion of some information in his pre-sentence report. The District Court rejected that argument as well.  Because Dupree does not appeal that decision, we need not address it.

[5] In reaching its decision, the District Court referred to the arrest of Dupree and Boyd on March 8, 2007, for several drug-related offenses.  Dupree was convicted of possession of drug paraphernalia.

I understand he's recanted that. In my view, there is clearly a history of the two of them being involved in drug activity. As I said, based on a 2007 arrest and conviction.

I also am basing this finding on the fact that Mr. Dupree knew that Mr. Boyd had a prior felony conviction and couldn't purchase the gun that is the subject of this offense. That further supports the notion that Mr. Dupree had reason to believe that Mr. Boyd would use this weapon in the commission of a felony.

(App. at 36-39). The District Court sentenced Dupree to twenty-four months imprisonment and three years of supervised release.

Dupree appeals his sentence, specifically challenging the four-level sentencing enhancement. For the following reasons, we will affirm the sentence imposed upon Dupree by the District Court.[6]

## II. Discussion

Dupree argues that the District Court erred in applying a four-level sentencing enhancement pursuant to Section 2K2.1(b)(6) of the Sentencing Guidelines. First, Dupree contends that the District Court could not have determined that he obtained and transferred the firearm as part of a drug deal with Boyd. According to Dupree, any drugs he received from, or any drug-related debts he incurred to, Boyd occurred before he

---

[6] The District Court for the District of Delaware had jurisdiction pursuant to 18 U.S.C. § 3231. We may review a final judgment of the District Court pursuant to 28 U.S.C. § 1291 and may review a sentence pursuant to 18 U.S.C. § 3742(a). We review *de novo* the District Court's application of the Sentencing Guidelines and examine the District Court's finding of facts for clear error. *United States v. Navarro*, 476 F.3d 188, 191 (3d Cir. 2007).

agreed to purchase a gun for Boyd, and thus, the drug transaction was not predicated or conditioned upon the exchange of a firearm. For that reason, Dupree insists that his firearm purchase was not committed in connection with his drug dealings with Boyd and, therefore, cannot serve as a basis for the enhancement. Second, Dupree disputes the District Court's finding that he knew or had reason to believe that Boyd would use the firearm in connection with another felony offense, such as drug distribution. Dupree could not have known or had reason to believe that Boyd would commit another felony with the firearm, he argues, simply because Boyd was prohibited from owning a firearm and had previously partaken in drug activity. Dupree submits that there is no evidence to suggest that, at the time of the firearm transfer, he may have known that the firearm would be used in connection with a future felony.

The District Court rejected Dupree's argument at the time of his sentencing. Again, the District Court held that "Mr. Dupree had reason to believe that the gun that he was purchasing for Mr. Boyd would be at a minimum possessed by Mr. Boyd in connection with another felony offense." (*Id.* at 36-37). The District Court based its decision on "the conviction that Mr. Dupree obtained back when he was found with Mr. Boyd and another in Newark, Delaware, in a situation where there were charges of intent to distribute and other charges" (*Id.* at 37) and the fact that "Mr. Dupree knew that Mr. Boyd had a prior felony conviction and couldn't purchase the gun that is the subject of this offense." (*Id.* at 38). We conclude that the District Court's determination was not clearly erroneous.

Section 2K2.1(b)(6) of the Sentencing Guidelines provides for a four-level increase in the Guidelines' base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense . . . ." U.S.S.G. § 2K2.1(b)(6). "[T]he government bears the burden of proving by a preponderance of the evidence that the facts warrant an enhancement," but it need not "prove the precise means and manner of transfer." *United States v. Cicirello*, 301 F.3d 135, 142 (3d Cir. 2002) (citation omitted). The government "must, however, present some facts to show the enhancement should be applied, facts from which an inference of [Dupree's] knowledge or reason to believe can be drawn." *Id.*

At the time of the firearm transfer, Dupree had reason to believe that Boyd would use or possess the firearm in connection with another felony offense, specifically a drug-related offense. Before purchasing and transferring the firearm, Dupree already knew of, and seemingly participated in or associated himself with, Boyd's prior wrongdoing. As illustrated by their joint arrests in March 2007, Dupree had specific knowledge of Boyd's drug activities. He also knew that Boyd, a felon, could not lawfully purchase or possess a firearm. From these facts, Dupree had reason to believe that if he fulfilled Boyd's explicit request and purchased him a firearm, Boyd would employ that firearm in furtherance of criminal activities with which Dupree had been intimately familiar. *See United States v. Mahalick*, 498 F.3d 475, 480 (7th Cir. 2007) (affirming defendant's

sentencing enhancement for transferring a firearm because he had reason to believe that the firearm would be used in a felony where the transferee "was a convicted felon, and had done drugs with [defendant] and committed acts of violence in his presence").

Further bolstering this conclusion is Boyd's own, albeit disputed, statement to law enforcement officials in which he admitted that he had purchased the firearm to repay Boyd for marijuana that Boyd had furnished to him. Dupree's admission evinces his knowledge that Boyd continued to deal drugs. It also reasonably reinforces the notion that any handgun procured by Boyd may have been used in connection with those drug-dealing activities.[7] *See United States v. Navarro*, 476 F.3d 188, 191-92 (3d Cir. 2007) ("Possession of a gun is often a practical prerequisite for the sale of controlled substances or commission of other violent acts."); *see also Mahalick*, 498 F.3d at 480 (concluding that transferee's offer to give transferor-defendant drugs in exchange for firearm demonstrated transferee's propensity to commit crimes). Moreover, although we must

---

[7] At sentencing the Government also argued, and again argues before us, that the four-level enhancement of Section 2K2.1(b)(6) should apply to Dupree by virtue of his exchange of the firearm for marijuana. Again, Section 2K2.1(b)(6) punishes a defendant who "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). Although he later recanted his statement, Dupree originally admitted to law enforcement officials that he transferred the handgun to Boyd to settle a debt he owed for marijuana. Under these circumstances, the gun may have been traded as part of, and thus may have facilitated, a drug deal. *See Navarro*, 476 F.3d at 197 (applying Section 2K2.1(b)(6) on the grounds that "the possession of a firearm facilitates a drug transaction when that firearm serves as an item of trade"). However, the District Court did not make any specific findings regarding this possible basis for the enhancement, and did not impose the enhancement based on that theory. We therefore decline to address it here.

consider Dupree's knowledge at the time he gave the firearm to Boyd, we also observe that Dupree traveled with Boyd to New Jersey to participate in felonious activities, *i.e.*, burglaries, less than a month after the firearm transfer. During this endeavor, Boyd stole a car that Dupree would drive that same night, and they entered into a high-speed chase with law enforcement officials. Coupled with their previous criminal interaction, the temporal proximity between the firearm transfer and the incidents in New Jersey, including Dupree and Boyd's intent to commit robberies there, supports the logical inference that Dupree had reason to believe that Boyd would use the firearm in connection with another felony offense.

Nevertheless, Dupree aptly notes that illegal drug distribution need not always involve guns or violence and that, under some circumstances, the transfer of a firearm to a known drug dealer may not categorically implicate the four-level enhancement under Section 2K2.1(b)(6). In this case, however, we cannot conclude that the District Court clearly erred when it found that Dupree, who had been associated with Boyd's previous drug venture and later joined with him to commit burglaries in New Jersey, had reason to believe that the firearm he gave to Boyd would be used in connection with another felony. Therefore, Dupree's sentence is affirmed.

### III. Conclusion

For the reasons discussed above, we will affirm Dupree's sentence.