In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3024

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL ANGELO TOVAR,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 20-cr-40023 — **Sara Darrow**, *Chief Judge.*

———————————

ARGUED OCTOBER 26, 2023 — DECIDED DECEMBER 18, 2023

———————————

Before FLAUM, BRENNAN, and KIRSCH, *Circuit Judges.*

FLAUM, *Circuit Judge*. Michael Angelo Tovar pleaded
guilty to various drug and firearm charges and was sentenced
to 101 months in prison. On appeal, he raises three issues: one
stemming from attempts to withdraw his guilty plea for the
firearm charges and two concerning the calculation of his sen-
tence. Finding no error, we affirm.

## I.    Background

Michael Angelo Tovar sold cocaine to a confidential source in Moline, Illinois twice in February 2020. Police arrested him at a bar the next month, recovering $416 and 1.8 grams of cocaine from his pockets. That same day, they searched Tovar's home pursuant to a valid search warrant, finding $38,500, a .380-caliber pistol with loaded magazine, one round of .380 ammunition, 164.4 grams of marijuana, 29.7 grams of cocaine, two drug scales, and inositol powder. Most of the cash—$33,500—was in a cracker box under the floor vent in the home's only bedroom. Hanging in the closet was a jacket containing the remaining $5,000, the pistol, and loaded magazine. Most of the marijuana was found in the closet as well, while some of the cocaine, one of the drug scales, and the inositol powder were on the bedroom dresser.

A grand jury subsequently indicted Tovar on three drug and two firearm charges. Most relevant to this appeal are the firearm offenses: possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (Count 4) and possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) (Count 5).

Tovar was initially represented by Federal Public Defender, Jennifer Hart, who negotiated a plea deal with the government. Hart informed the district court of the agreement on April 21, 2021, but five days later Tovar replaced Hart with Nathaniel Nieman.

Tovar's change-of-plea hearing went forward with his new counsel on May 4, 2021. During the hearing, the district court placed Tovar under oath and addressed him as required

by Federal Rule of Criminal Procedure 11(b). The district court confirmed that Tovar "receive[d] a copy of the indictment and discuss[ed] the charges fully with Mr. Nieman, including all of the discovery that the government provided and the case in general" and was "fully satisfied with the counsel, representation and advice that [Nieman] ha[d] given." The government then recited "the essential elements of the[] offenses," and Tovar confirmed that he understood them. Tovar admitted to selling cocaine and possessing drugs and a firearm at his house. The district court accepted his guilty plea as to all counts.

In February 2022, while still represented by Nieman, Tovar filed two "*pro se*" motions to withdraw his guilty plea for possessing a firearm in furtherance of a drug trafficking crime. Tovar argued that Nieman provided ineffective assistance of counsel by improperly advising him of the elements of and evidence supporting the charge. The district court denied both motions but removed Nieman from the case, appointing Murray Bell under the Criminal Justice Act.

A few months later, Tovar filed a counseled motion to withdraw his guilty pleas as to both firearm charges, requesting an evidentiary hearing. Tovar argued that he was legally innocent because he was justified in possessing the weapon and that Nieman provided ineffective assistance when advising him of the charges' elements and potential defenses. The parties fully briefed the motion, attaching evidence to support their positions. At a status conference in August 2022, the district court concluded that an evidentiary hearing was unnecessary because "[t]he Rule 11 hearing was comprehensive and gave the defendant ample opportunity to raise any of the concerns that he is now raising after the fact." It further stated

that the evidence proffered in support of the motion did not "tip the scales in terms of justifying an evidentiary hearing."

After oral argument, the district court denied the motion to withdraw. The district court accepted as true "all of the facts … proffered and argued" by the defense but found that Tovar's plea was knowingly and voluntarily entered and that there was no viable claim of legal innocence.

In October 2022, the district court sentenced Tovar to 101 months in prison. When calculating Tovar's base offense level for his drug crimes, the district court applied Application Note 5 to Guideline § 2D1.1, converting the $38,916 found on his person and in his home to its equivalent marijuana weight as suspected drug proceeds. The result was a base offense level of twelve. For Tovar's felon-in-possession charge, the district court considered his 2014 state cannabis conviction as a predicate controlled substance offense, increasing the base offense level under § 2K2.1(a)(4)(A). Tovar timely appealed.

## II.    Discussion

Tovar brings three challenges on appeal. He argues that the district court erred when it denied his motion to withdraw without conducting an evidentiary hearing, and that it committed two errors when calculating his base offense level under the Guidelines. We take his arguments in turn.

### A. Evidentiary Hearing on Motion to Withdraw

Tovar insists that the district court erred by denying his request for an evidentiary hearing on his motion to withdraw the guilty plea. "We review the district court's decision not to hold an evidentiary hearing for abuse of discretion[] … and its factual findings, including whether the defendant

knowingly and voluntarily entered the plea, for clear error." *United States v. Smith*, 989 F.3d 575, 583 (7th Cir. 2021) (citations and internal quotation marks omitted).

Moving to "withdraw a [guilty] plea does not automatically entitle a defendant to an evidentiary hearing." *Id.* Instead, "[w]hether to hold a hearing on the plea's validity is a matter left to the trial court's sound discretion." *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015). "If no substantial evidence is offered, or if the allegations advanced … are conclusory or unreliable, the motion may be summarily denied." *Id.*; *see also United States v. Silva*, 122 F.3d 412, 415 (7th Cir. 1997) (explaining that a district court may "permit the withdrawal of the guilty plea, conduct an evidentiary hearing, or deny the motion with an explanation as to why the evidence is insufficient or incredible").

Tovar argues that he should have been given the opportunity to present evidence at a hearing that he was justified in possessing the firearm (that is, legally innocent), and that Nieman provided ineffective assistance by neglecting this defense. The district court, however, considered Tovar's proffered facts "justifying" his possession as true, and Tovar failed to identify any additional evidence that he would have presented at a hypothetical hearing. On these facts, an evidentiary hearing was unnecessary. Accordingly, the district court did not abuse its discretion in denying Tovar's request. *See United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004) (holding that a defendant is not entitled to a hearing where his allegations are inherently unreliable, conclusory, and fail to "impugn[] the validity of the plea" (citation omitted)); *see also United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (concluding no abuse of discretion where the "defendant did not

indicate to the district court (and ha[d] not indicated on appeal) that he would have presented any other evidence … at a putative evidentiary hearing").

The district court did not clearly err in finding Tovar's evidence insufficient to warrant withdrawal of his guilty plea either. We have recognized legal innocence "as a fair and just reason to withdraw a guilty plea," but a defendant must "proffer some credible evidence" of legal innocence to prevail. *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). "[B]are protestations of innocence … will not suffice." *Id.*; *see also United States v. Harper*, 934 F.3d 524, 527 (7th Cir. 2019) ("[A] court has discretion to allow [a defendant to withdraw his guilty plea] if the defendant presents a fair and just reason." (citation and internal quotation marks omitted)).

Tovar claims he was justified in possessing the weapon (and thus legally innocent of the firearm offenses) because he feared for his life: He was stabbed in 2016, and the perpetrator sent a subsequent threat via social media in January 2020. According to Tovar, this necessitated possessing a firearm for protection.

"The defense of necessity in a criminal case is a narrow one." *United States v. Kilgore*, 591 F.3d 890, 893 (7th Cir. 2010). "[A] defendant must ordinarily establish that he faced an *imminent* threat of serious bodily injury or death and that he had no reasonable legal alternatives to avoid that threat." *Id.* (emphasis added). In the context of a felon-in-possession charge, we have explained "the defense has only [been] applied to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself." *Id.* (alteration in original) (citation and internal quotation marks omitted); *see also United States v.*

*Cherry*, 921 F.3d 690, 692 (7th Cir. 2019); *United States v. Perez*, 86 F.3d 735, 736–37 (7th Cir. 1996) (denying the availability of a justification defense where the defendant, fearful that three men outside his apartment were planning to rob him, possessed a firearm to protect himself).

While the district court considered Tovar's facts in support of the defense as true, it found that any threat was "stale at the time that [Tovar] possessed the firearm." As a result, there was "no imminent threat of harm which would justify" his possession of the weapon. Given the narrowness of the defense, the district court's finding was not clearly erroneous. Furthermore, without a meritorious necessity defense, there is no evidence that Nieman's "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

In sum, the district court did not abuse its discretion in denying Tovar's request for a hearing—because Tovar did not argue or show that he would present different or additional evidence—or clearly err in denying his motion to withdraw his guilty plea.

**B. Guidelines Calculation**

Tovar's remaining challenges concern the district court's calculation of his Guidelines sentence.

*1. Controlled Substance Offense Enhancement*

First, he argues that the district court erred by applying the "controlled substance offense" enhancement under § 2K2.1(a)(4)(A). That provision applies if the defendant "committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The

district court found Tovar's predicate offense was his prior Illinois cannabis conviction.

According to Tovar, since Illinois's definition of "cannabis" is broader than the federal definition of "marihuana," his Illinois conviction cannot count as a predicate "controlled substance offense" under the Guidelines. *See* U.S.S.G. § 2K2.1, cmt. n.1 (giving the term "controlled substance offense" in § 2K2.1(a)(4)(A) the meaning ascribed in § 4B1.2(b): "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that … prohibits the … possession of a controlled substance … with intent to … distribute[] or dispense.").

This argument is foreclosed by Circuit precedent. We have rejected that the term "controlled substance" refers only to a substance banned by the federal Controlled Substances Act, 21 U.S.C. § 802(6). *United States v. Ruth*, 966 F.3d 642, 651–52 (7th Cir. 2020). Instead, the Guidelines broadly define "controlled substance offense" to "include state-law offenses related to controlled … substances punishable by imprisonment for a term exceeding one year." *Id.* at 652 (quoting *United States v. Hudson*, 618 F.3d 700, 703 (7th Cir. 2010)). Since Illinois law expressly regulates cannabis, it fits the natural meaning of "controlled substance." *See United States v. Morales*, No. 22-2042, 2023 WL 3451271, at *1–2 (7th Cir. May 15, 2023) (holding that *Ruth* forecloses arguments that an Illinois cannabis conviction is not a "controlled substance offense" under § 2K2.1); *cf. United States v. Wallace*, 991 F.3d 810, 817 (7th Cir. 2021) (applying the "natural meaning of 'controlled substance'" and holding an Illinois drug conviction was "a controlled substance offense according to the guidelines").

We have repeatedly reaffirmed *Ruth*, rejecting numerous requests to overrule it. *See, e.g.*, *United States v. Ramirez*, 52 F.4th 705, 711–16 (7th Cir. 2022) (collecting cases), *cert. denied*, 143 S. Ct. 2480 (2023). Nonetheless, Tovar urges us to revisit *Ruth*, calling out a "split or inconstancy" among the circuit courts over the proper definition of a "controlled substance offense." *Ruth* itself acknowledged the split, 966 F.3d at 653, and since *Ruth*, "our position has gained, not weakened, as the dialogue among the circuits has continued," *Ramirez*, 52 F.4th at 715.

Tovar's arguments are no different than those we rejected in *Ruth* and its progeny. We affirm the district court's application of the "controlled substance offense" enhancement.

### 2. *Conversion*

Last, Tovar argues that the district court miscalculated the drug quantities used to determine his base offense level. Specifically, he says that the district court erred by converting the $38,916 to its equivalent weight in marijuana. "We review a district court's drug quantity calculations for clear error" and will "uphold the district court's factual findings" absent "a firm and definite belief that the district court has erred." *United States v. Jones*, 900 F.3d 440, 446 (7th Cir. 2018).

The Guidelines allow courts to "approximate the quantity of the controlled substance" where "the amount [of drugs] seized does not reflect the scale of the offense." U.S.S.G. § 2D1.1, cmt. n.5. So, "[w]hen there is a sufficient basis to believe that cash found in a defendant's possession was derived from drug sales, a court properly includes the drug equivalent of that cash in the drug-quantity calculation." *United States v. Simmons*, 582 F.3d 730, 737 (7th Cir. 2009). The district

court "need only support its findings by a preponderance of the evidence." *Jones*, 900 F.3d at 446.

Here, the district court found that evidence supported that the $38,916—found in Tovar's pockets, in a cracker box under the bedroom floor vent, and in a jacket in the bedroom closet—was drug proceeds. In doing so, it emphasized the proximity of the cash to the marijuana, cocaine, drug scale, and inositol powder in Tovar's home, explaining, "the [c]ourt can make a reasonable inference that the location of drug distribution materials and drugs to the cash supports that it was proceeds from the sale of [drugs]."

Tovar argued that the cash instead came from buying, repairing, and re-selling used cars. To that point, he presented evidence that between August 2018 and November 2019 he bought five used cars that Augustine Motors later resold for cash profit. Additionally, he presented bank records showing transactions and a $23,000 cash loan in February 2019.

Finding this evidence unpersuasive, the district court explained that the cash transactions were distant from the relevant time period and for far less than the recovered amount. Moreover, the district court noted that while the evidence demonstrated that Tovar frequented banks, most of the cash was found hidden under a floor vent, "which is not the typical way for legitimate funds to be stored."

Tovar is correct that there was no concrete evidence establishing that he made the $38,916 by selling drugs. All that is required, though, is a "sufficient basis to believe" that the cash was "derived from drug sales." *Simmons*, 582 F.3d at 737. Considering the evidence, the district court did not clearly err in converting the cash to its weight in marijuana. *See id.* (holding

no clear error where cash found under sofa cushions, near drug-related paraphernalia, was converted to drug proceeds). We affirm the district court's conversion and Tovar's sentence.

### III.   Conclusion

For the reasons explained, the judgment of the district court is AFFIRMED.