RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App.
0132P (6th Cir.)
File Name: 01a0132p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

JOSEPH BENJAMIN TAYLOR
III,
    *Defendant-Appellant.*

No. 99-1643

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 98-00059—David W. McKeague, District Judge.

Argued: October 31, 2000

Decided and Filed: April 24, 2001

Before: KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:** John H. Rion, RION, RION & RION, Dayton,
Ohio, for Appellant. Joan E. Meyer, ASSISTANT UNITED
STATES ATTORNEY, Grand Rapids, Michigan, for
Appellee. **ON BRIEF:** John H. Rion, RION, RION &

RION, Dayton, Ohio, for Appellant.  Phillip J. Green, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  Joseph B. Taylor was indicted on charges of (1) possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), (2) unlawful possession with intent to distribute a quantity of powder cocaine, (3) unlawful possession with intent to distribute a quantity of cocaine base, (4) unlawful possession with intent to distribute a quantity of marijuana, and (5) conspiring to distribute cocaine base, all in violation of 21 U.S.C. § 841.  Taylor's motion to suppress the evidence found during a search of his apartment prior to his arrest was denied and the case proceeded to trial.  He was convicted by a jury on all of the charges and sentenced to concurrent prison terms of 120 months, 420 months, 420 months, 360 months and 420 months, respectively.[1]  He timely appealed, claiming in the brief filed by his counsel that the district court had erred in denying the motion to suppress because the search of his apartment—including a protective sweep made prior to any arrest—violated his rights under the Fourth Amendment; that the evidence was insufficient to support his conspiracy conviction; and that the trial court had erred in enhancing his sentence for his role in the offense and for possessing a weapon during a drug trafficking offense.  Taylor also filed a pro se brief challenging the validity of the search.  We conclude that neither the protective sweep of Taylor's apartment nor any other aspect of the search violated the Fourth Amendment and that there is no merit to any of

_____

[1] The sentence also included concurrent periods of supervised release, the maximum period being 10 years, a $10,000 fine, and a $500 assessment.

that activity has been considered at sentencing for a separate crime." *Id.* at 398.

*Gibbs*, 190 F.3d at 215-16.

Taylor was convicted of several distinct drug offenses.  The district court found that he had used a weapon in connection with those offenses.  Because of his possession of that weapon, he was also convicted under 18 U.S.C. § 922(g), an offense entirely independent of and distinct from the drug offenses.  As was the case in *Gibbs*, Taylor's possession of a weapon was the basis for one offense and a mandatory ground for enhancement in a separate offense with different requirements.  We hold that the district court did not violate Taylor's protection against double jeopardy by imposing the § 2D1.1(b)(1) enhancement.

This circuit has specifically rejected the double jeopardy/double counting argument in an unpublished opinion, *United States v. Simpson*, Nos. 97-2305, 97-2307, 97-2316, 98-1050, 1999 WL 777348 (6th Cir. Sept. 21, 1999).  There, we held that the grouping of offenses for a defendant who, like Taylor, had been convicted under 21 U.S.C. §§ 841(a)(1) and 846 as well as 18 U.S.C. § 922(g), eliminated the possibility of a double jeopardy violation or a double counting problem under the Sentencing Guidelines.  We reasoned that after the grouping of the offenses and adding the § 2D1.1(b)(1) enhancement, the § 922(g) conviction was effectively disregarded in arriving at the offense level.  We adopt both the reasoning and the conclusion of *Simpson* and hold that by applying the enhancement, the district court did not place Taylor in double jeopardy or engage in double counting.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Joseph B. Taylor's conviction and sentence.

district court, and we therefore review it for plain error.[4] We find no error in the district court's use of the enhancement, let alone plain error.

Our research has not produced any published opinion from this circuit addressing the question of whether the court, without violating the prohibition against double jeopardy, may apply the § 2D1.1(b)(1) enhancement for possessing a dangerous weapon during the commission of a drug offense when the defendant has already been convicted under 18 U.S.C. § 922(g) for possessing the same weapon. The Third Circuit, however, has addressed the issue succinctly and, we think, correctly. In *United States v. Gibbs*, 190 F.3d 188 (3rd Cir. 1999), the defendant, a convicted felon, had been convicted under 18 U.S.C. § 922(g) for possessing a shotgun. He was later convicted on drug conspiracy charges under 21 U.S.C. § 846 and found to have possessed the same shotgun during his participation in the drug conspiracy. The district court enhanced his sentence under U.S.S.G. § 2D1.1(b)(1) for possession of a weapon in connection with a drug offense. The Third Circuit found no double jeopardy violation, explaining:

> The Supreme Court has made clear that the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for that relevant conduct. *See Witte v. United States*, 515 U.S. 389, 395 (1995). That is, a court does not violate a defendant's protections against double jeopardy when it convicts a defendant for crime X because of conduct Y, and convicts him for conduct Y as well . . . .

> The Court explained, "[W]e specifically have rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where

---

[4] Taylor did object to the enhancement, but on the ground that the weapon strapped under the ironing board did not belong to him and he had not known that it was there. The double jeopardy objection is raised for the first time on appeal.

Taylor's claims of error. We therefore affirm the judgment of the district court.

## I. BACKGROUND

The critical facts in this appeal surround the search of Taylor's apartment, which led to his arrest and indictment. On the evening of the search, three officers—Shannon Bagley, Rod Rought, and Jim Sandlin—from the Kalamazoo Valley Enforcement Team ("KVET") were investigating a report provided to them by the local police department. The KVET report indicated that Taylor was suspected of dealing drugs, selling illegal weapons, and being involved in the Michigan militia; the report further contained information that Taylor was a suspect in one or more murders. Although the officers did not at that time have probable cause to obtain a search warrant, they decided to go to Mr. Taylor's apartment to ask him a few questions.

The officers arrived at Taylor's apartment complex around 9:00 p.m. The building had a security system that required visitors to ring over an intercom to gain access to the building. Not wanting to warn Mr. Taylor of their presence, the officers rang the other apartments in the building until they found a resident who was willing to let them in, provided that she not be identified as the one giving them access. Once inside the building, the officers briefly looked around the area surrounding Taylor's apartment and then knocked on the apartment door.

A voice from inside the apartment called out, "Who is it?" The officers identified themselves as police and asked the person speaking to come to the door so they could talk to him. After a couple of minutes, during which time the officers heard some "shuffling" going on inside the apartment, the embodiment of the voice came to the door. One of the officers held up his badge and identification to the peephole in the door, whereupon the voice inside asked the officers to wait for a moment because he wanted to call his grandmother. The officers heard more rustling and shuffling from inside, and several minutes later, a man fitting Taylor's description

answered the door. The officers asked if they could come inside, and the man answering the door agreed.

Inside the apartment, the three officers found themselves crowded into a narrow entranceway, and asked if they could move into the livingroom where it would be less crowded. The man, who identified himself as Renaldo, agreed. (He later turned out to be Clem Renaldo Hill, Mr. Taylor's brother.) Hill acknowledged that Taylor lived in the apartment, but told the officers that Taylor had gone to the gym.

In the livingroom area, Officer Bagley saw what he immediately recognized as a marijuana stem, lying on the coffee table. He called this to Officer Rought's attention by pointing his flashlight at it. Rought picked up the stem, which was perhaps an inch in length, for a closer inspection, and agreed it was marijuana.

At that point, the officers told Hill they would be securing the premises until they could obtain a search warrant. Although Hill denied there were any drugs or other people in the apartment, the officers explained to him that they were going to conduct a protective sweep of the premises to ensure that there were no other people in the apartment. During this sweep, Officer Bagley found Taylor, crouching fully clothed in the bathtub behind the shower curtain. Bagley also opened a large closet located near the bathroom and discovered—amidst an overwhelming odor of marijuana—an open duffle bag revealing baggies of processed marijuana. Bagley did not seize the contraband, but instead left the apartment to obtain a search warrant. Officers Rought and Sandlin stayed behind with Hill and Taylor, who were handcuffed on the couch.

When Bagley returned after an hour or so with a warrant, the officers conducted a thorough search of the apartment. They seized the 20-30 pounds of marijuana in the duffle bag that Bagley had seen earlier. In addition, they found approximately one pound of powder cocaine, some cocaine base, nearly $25,000 in cash (mostly in $20 bills), an

claimed right to a larger share of the fruits of the crime, (e) the degree of participation in planning or organizing the offense, (f) the nature and scope of the illegal activity, and (g) the degree of control and authority exercised over others. *See* U.S.S.G. § 3B1.1, comment. (n. 4); *see also United States v. Gort-DiDonato*, 109 F.3d 318 (6th Cir. 1997) ("[A] defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be applied."). Taylor argues that because there was no evidence before the district court that he supervised or controlled any other participants, the enhancement was not warranted. The district court, however, credited the testimony elicited at the sentencing hearing from Special Agent Auberman of the FBI, who identified Theron Hunt, Taylor's co-defendant[3] and co-conspirator, as having been supervised by Taylor. The district court further found that Taylor qualified for an enhancement because Taylor stated he had two drug suppliers in the Detroit area; because the quantity of drugs found in Taylor's apartment was more than Taylor could possibly have maintained for his personal use; and because an agent of the Drug Enforcement Agency had testified at trial that the supplies and quantities of drugs found in Taylor's apartment were typical of those possessed by a mid-level drug distributor. We conclude it was not error for the district court to impose a two-level enhancement for Taylor's leadership role in the enterprise. *See also United States v. Maliszewski*, 161 F.3d 992, 1017 (6th Cir. 1998).

   2.   *Enhancement under U.S.S.G. §2D1.1(b)(1)*

The district court also enhanced Taylor's sentence by two points because he possessed a dangerous weapon in connection with a drug offense. *See* U.S.S.G. §2D1.1(b)(1). Taylor argues that because he was also convicted and sentenced for being a felon in possession of the same weapon, the enhancement violated the principles of double jeopardy and was double counting. This objection was not raised in the

---

[3]Hunt pled guilty prior to Taylor's trial.

conspiracy. *See United States v. Hamilton*, 689 F.2d 1262, 1272 (6th Cir. 1982).

The jury considered evidence that Taylor had in his apartment a large quantity of illegal drugs, a triple-beam scale, electronic scales, and nearly $25,000 in cash. Most of the cash was in $20 bills, and the jury heard testimony that large amounts of cash in smaller denominations, particularly $10 and $20 bills, was evidence that money from individual drug sales was flowing back up the chain through Taylor. This, coupled with the 9 mm pistol strapped to the underside of the ironing board and aimed at the apartment door, is sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Taylor was guilty of conspiracy.

C.  *SENTENCING*

1.  *Enhancement under U.S.S.G §3B1.1(c)*

At the time of sentencing, the district court enhanced Taylor's sentence under the guidelines by two levels because he was an organizer, leader, manager, or supervisor. Taylor argues that this conclusion was not supported by the evidence. In reviewing sentencing questions, we review de novo the district court's legal conclusions in applying the guidelines; we review for clear error the court's factual findings. *See United States v. Smith*, 39 F.3d 119, 122 (6th Cir. 1994). A factual finding is clearly erroneous when the decision "strike[s] us as wrong with the force of a five-week-old, unrefrigerated dead fish." *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990) (quoting *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

The sentencing guidelines allow for a two-point enhancement for a criminal defendant who was an "organizer, leader, manager or supervisor." *See* U.S.S.G. § 3B1.1(c). The guidelines do not define manager or supervisor, but application note 4 indicates that certain factors are appropriately considered: (a) the exercise of decision-making authority, (b) the nature of participation in the commission of the offense; (c) the recruitment of accomplices, (d) the

assortment of drug paraphernalia, and a 9 mm pistol—equipped with a laser scope—strapped underneath an ironing board aimed at the front door. After completing the search, the officers arrested Taylor.

## II.  DISCUSSION

A.  *MOTION TO SUPPRESS*

During the suppression hearing, the district court listened to the testimony of both Officers Rought and Bagley and the testimony of Clem Hill. The court made several specific factual findings: that a resident of the apartment complex had granted the officers access to the building; that the government had properly obtained Hill's consent to enter the apartment; that the officers had Hill's permission to move from the hallway into the livingroom; that the officers did not move anything to find the marijuana stem and recognized the stem for what it was; and that the government established by a preponderance of the evidence facts that would warrant a reasonably prudent officer in the apartment to believe that the area to be swept harbored an individual posing a danger to the officers on the scene. In reaching these conclusions, the district court explicitly rejected the testimony of Clem Hill as not being credible. Finally, the district court concluded, as a matter of law, that considering the facts of the case and *Maryland v. Buie*, 494 U.S. 325 (1990), the protective sweep was permissible, that the marijuana stem was in plain view, and that the later search pursuant to the search warrant was not tainted by any violation of the Fourth Amendment.

When reviewing the denial of a motion to suppress, we review the district court's legal conclusions de novo and the factual findings for clear error. *See United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996). We find no clear error in the district court's factual findings. The district court explained the basis for these findings thoroughly, and they are well supported in the record. Taylor's challenges to the district court's legal conclusions, as we shall explain, are without merit.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. Generally, this means that, with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant. Taylor argues that officers violated his Fourth Amendment rights by conducting a protective sweep of his apartment when they had not first placed Hill under arrest, and in the absence of facts that would have warranted such a search, and thus the search that ultimately exposed the hidden cocaine, crack, marijuana, money and gun was tainted.

We address first Taylor's claim in his pro se brief that the police officers violated his Fourth Amendment rights when they entered the common areas of his apartment building without a search warrant or probable cause. *See United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976). In *Carriger*, we recognized that a tenant had a reasonable expectation of privacy in the locked common areas of an apartment complex. *See id.* at 551. In that case, the police had bypassed the buzzer system by slipping into the apartment building behind some workmen as they exited. We held that when "an officer enters a locked building, without authority or invitation, the evidence gained as a result of his presence in the common areas of the building must be suppressed." *Id.* at 552. However, we were careful to distinguish between those people who were trespassers and those persons who were invited guests of the other tenants. Here, the district court specifically found that the officers gained entry into the building by the invitation of another tenant. Their entrance into the common area of the building to access Taylor's apartment therefore did not violate the Fourth Amendment.

Through counsel, Taylor claims that the officer's discovery of the marijuana stem on the coffee table in his apartment does not provide evidence to support either a sweep of the apartment or a finding of probable cause to justify the issuance of a warrant. The district court found, as a matter of fact, that the officers saw the stem in plain view and immediately recognized it as marijuana, and Taylor does not challenge that finding. Rather, Taylor complains that it is not

officers had not made the protective sweep of the apartment, but had simply waited for the return of the officer who went for the search warrant—assuming, of course, that such a course of action had not resulted in an attack on the officers who remained in the apartment and the destruction of the evidence during the wait—the search pursuant to the warrant would inevitably have led to the discovery of Taylor and the crack cocaine in the bathtub, the duffle bag of marijuana in the closet, the other quantities of marijuana, the powder cocaine, the assorted drug paraphernalia, the cash and the 9 mm pistol. *See United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (describing the "inevitable discovery doctrine," which "allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means.").

B.    *SUFFICIENCY OF THE EVIDENCE*

Taylor contends that he was wrongly convicted of conspiracy because there was insufficient evidence presented to support his conviction. In reviewing a claim of insufficient evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989). In a drug conspiracy conviction, the essential elements are: (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. *See United States v. Welch*, 97 F.3d 142, 148-49 (6th Cir. 1996).

Taylor argues that he was merely involved in the buying and selling of cocaine and therefore he could not be convicted of conspiracy. *See United States v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir. 1977). The government counters that the buyer-seller defense to a conspiracy charge is a narrow exception that is applicable only in circumstances (1) when the buyer and seller are the sole participants in the conspiracy or (2) where the buyer is a minor figure in a complex

Hill in the apartment who posed a threat to their safety. Before they were admitted into the apartment, they heard scuffling noises from inside that indicated that there might be more than one person in the apartment. They had a report from the local police department that Taylor was believed to be a drug and weapons dealer and that he was suspected of having been involved in more than one murder currently under investigation. Furthermore, Hill's demeanor indicated that he was trying to hide something.

Taylor argues that the police officers decided to conduct a protective sweep solely because they were investigating an alleged drug dealer, and that suspicion alone is not enough to justify such a sweep. *See United States v. Hatcher*, 680 F.2d 438, 444 (6th Cir. 1982) ("[W]e believe it was error for the district court to conclude that a search of the basement subsequent to Hatcher's arrest and handcuffing was justified solely because 'the subject of drugs is a dangerous one, dangerous for all of those persons involved in it, especially those who are on the law enforcement side.'"). We agree with this proposition of law, but it is beside the point. The record is clear that these officers had more than just a generalized suspicion based on allegations that Taylor was dealing drugs. Having arrived at the apartment of a murder suspect, the officers actually saw a piece of marijuana in plain view; they noted that Hill was acting very nervously; and they had heard noises suggesting that more than one person was present in the apartment. Given the totality of the circumstances, we conclude that these officers had probable cause to believe there was contraband in that apartment and to believe there may have been others hiding in the apartment. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). They were therefore justified in making a protective sweep of the apartment to ensure their safety while a warrant was being obtained. The district court did not err in denying Taylor's motion to suppress.

Finally, as we have already determined, before the officers conducted the protective sweep, they had probable cause to obtain a search warrant. We think it is worth noting that if the

illegal to possess "the mature stalks" of a marijuana plant; that the government did not prove that the marijuana stem was not part of a mature stalk; therefore, it was not illegal for Taylor or Hill to possess the stem; therefore, the officers based their search on an item that it was legal for the defendant to possess. Further, Taylor reasons, the possession of a legal stem cannot be the basis for the officer's suspicion that they would find additional marijuana in the apartment or that they would find dangerous persons hiding there. And finally, Taylor says, the officers could not legally have seized the stem pursuant to the "plain view" exception to the warrant requirement because, since it was not unlawful for him to have possessed the stem, the officers could not show either that they had a lawful right of access to the stem or that its incriminating nature was immediately apparent.

The plain view exception to the warrant requirement applies when (1) the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed, (2) the item is in plain view, and (3) the incriminating character of the evidence is immediately apparent. *See Horton v. California*, 496 U.S. 128, 136 (1990). The district court found that the officers were legitimately present in the livingroom at Hill's invitation, the marijuana stem was in plain view, and the officers immediately recognized the stem as marijuana. Under these facts, the officers were justified in seizing the stem. That the stem of marijuana might later be determined to be from a mature stalk and therefore be excluded from the statutory prohibition on possession—a claim that we do not concede—does not vitiate its incriminating character at the time the officers saw it lying on the coffee table in plain view.

The remaining question is whether the officers' conduct after finding the stem was reasonable in the context of the Fourth Amendment. The officers concluded that the marijuana stem, considered in conjunction with the KVET investigation report, the shuffling noises they heard from the hallway, and Hill's overtly nervous behavior, constituted probable cause to believe that a search of the apartment would

reveal drugs. They therefore decided to send one of their number to obtain a search warrant. However, they concluded that they needed to secure the premises pending the issuance of the warrant. Accordingly, they conducted a "protective sweep" of the premises to ensure that there were no other persons hiding in the apartment who might pose a threat to the safety of the officers remaining on the scene. During the protective sweep, they found Mr. Taylor hiding in the bathroom and a duffle bag full of marijuana in the front closet.

The United States Supreme Court has endorsed the practice of conducting a protective sweep of an area to ensure police officer safety when arresting suspects. *See Maryland v. Buie*, 494 U.S. 325 (1990). In *Buie*, the Court concluded:

[T]he Fourth Amendment would permit the protective sweep undertaken here if the searching officer "possesse[d] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer in believing" that the area swept harbored an individual posing a danger to the officer or others.

*Id.* at 327 (quoting *Terry v. Ohio,* 392 U.S. 1 (1968), and *Michigan v. Long*, 463 U.S. 1032 (1983)).

Citing *Buie*, we have said that "[i]n order for officers to undertake a protective sweep of an area they must articulate facts that would warrant a reasonably prudent officer to believe that the area to be swept harbored an individual posing a danger to those on the scene." *See United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995). *Biggs* was also decided in the context of a protective sweep made incident to the lawful arrest of a suspect.

Taylor argues that a protective sweep is authorized only when it is made incident to a lawful arrest. Therefore, he contends, because Hill had not been arrested when the officers made their cursory search of Taylor's apartment, the sweep was *per se* invalid. In contrast, the government argues that

while *Buie* and *Briggs* were each decided in the factual context of officers' making an arrest, nothing in the those opinions indicates that an arrest is a mandatory prerequisite for conducting a protective sweep of the area. The government further points out that the *Buie* decision was based upon the reasoning set forth in the Supreme Court's earlier decisions in *Terry* and *Long*, both of which were investigative stop cases.

We believe the government presents the more compelling argument. Once an officer has probable cause to believe contraband is present, he must obtain a search warrant before he can proceed to search the premises. *See Segura v. United States*, 468 U.S. 796, 810 (1984). However, the Supreme Court has held that because evidence may be removed or destroyed before a warrant can be obtained, an officer does not violate the Fourth Amendment by securing the area to be searched and waiting until a warrant is obtained.[2] *Id.* We think that it follows logically that the principle enunciated in *Buie* with regard to officers making an arrest—that the police may conduct a limited protective sweep to ensure the safety of those officers—applies with equal force to an officer left behind to secure the premises while a warrant to search those premises is obtained. We emphasize, however, that the purpose of such a protective sweep is to protect the safety of the officer who remains at the scene, and for that reason, the sweep must be limited to a cursory search of the premises for the purpose of finding persons hidden there who would threaten the officer's safety.

In this case, the officers acted properly to secure the premises and wait for a search warrant before conducting a search of Taylor's apartment. The officers had articulable facts to support their belief that there were persons other than

---

[2] Of course, if the area cannot be secured and the evidence is likely to be removed or destroyed, the warrant requirement may be excused altogether. *See, e.g., Schmerber v. California*, 384 U.S. 757 (1966) (warrant requirement excused when exigent circumstances are present). Such circumstances have not been presented in this case.