

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAY 1 0 2018

Fairhurst. CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on 5-10-18

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94273-1 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| HOLLIS BLOCKMAN, | ) | |
| | ) | Filed MAY 1 0 2018 |
| Petitioner. | ) | |
| | ) | |
| _____ | ) | |

GONZÁLEZ, J.—Hollis Blockman was charged with and convicted of unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a school bus stop. Blockman was discovered in Patricia Burton's apartment during a protective sweep by police, which Burton consented to, in response to a report of an assault and robbery committed in the apartment by Burton and two men.

Blockman contends the sweep exceeded the scope of the "protective sweep" exception to the warrant requirement under *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990), and therefore the trial court erred in denying

his motion to suppress evidence discovered in the course of the protective sweep. However, because Burton's unchallenged consent fits within the consent exception to the warrant requirement, *State v. Mathe*, 102 Wn.2d 537, 541, 688 P.2d 859 (1984), we affirm.

FACTS

Teresa Green contacted police officers, reporting that she was assaulted and robbed while in Burton's apartment. Green identified Burton and James Marlowe as the assailants and notified police that they, along with Blockman, were likely still in the apartment.

Uniformed officers went to Burton's apartment to obtain more information about the alleged robbery and assault. Upon hearing why the officers were at her door, Burton invited them into her apartment, saying, "'I can't believe [Green] called the cops'" and "[y]ou can search everything. I don't have her money.'"[1] 1 Verbatim Report of Proceedings (VRP) (Aug. 17, 2015) at 26, 28. According to the officer's testimony, the police told Burton, "'You don't have to let us in.'" She responded, "'No, come on in.'" *Id.* at 28.

After entering the apartment and briefly conversing with Burton, the officers asked if there was anyone else in the apartment. Burton responded that two other

---

[1] Officer Hayward conveyed this account at trial; Burton did not testify at trial.

people were in the back bedroom. Burton did not specify whether the two people were Marlowe and Blockman, as Green had suggested earlier.

As the officers began the sweep, one officer proceeded in the hallway toward an open bedroom, and the officer witnessed a woman placing a $20 bill on a coffee table and Blockman holding a clear plastic bag containing a rock-like substance, which later tested positive for cocaine. As the officer announced he was with Tacoma Police, Blockman allegedly put his hands under the table rapidly. Blockman was seized and removed from the room.

Following his encounter with Blockman, the police officer further questioned Burton about the alleged robbery. The officer testified that he asked Burton, "'Are you giving me consent to search?'" and told her she could limit the scope of the search and stop the search at any time. *Id.* at 29. Burton then signed a warrantless search consent form.

At trial, Blockman moved to suppress the evidence acquired during his interaction with the officers in Burton's apartment. His argument focused on the officer's failure to provide *Ferrier*[2] warnings before entering the house. The trial court denied the motion, ruling that the officer "had concerns for his safety due to report of at least two unknown individuals . . . somewhere in the residence" and

---

[2] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

"was invited by Ms. Burton to conduct a protective sweep." Clerk's Papers (CP) at 252.[3] The trial court found the protective sweep reasonable to ensure no one would ambush the officers while they were questioning Burton.

On appeal, Blockman focused mainly on the warrantless protective sweep. The Court of Appeals affirmed, holding that "nothing in the rationale of *Buie* or its progeny suggests that an arrest is an indispensable prerequisite" for conducting a protective sweep. *State v. Blockman*, 198 Wn. App. 34, 39, 392 P.3d 1094. Blockman appealed, and we granted review. 188 Wn.2d 1014 (2017).

## ANALYSIS

This court reviews legal conclusions resulting from an order pertaining to the suppression of evidence de novo. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002); *see also State v. Carneh*, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

---

[3] The officer then asked if he could take a look, stating that they "always do a protective sweep" and that it is "standard procedure" for officers to conduct protective sweeps. 1 VRP (Aug. 17, 2017) at 26, 46. It is debatable whether the officer's incorrect assertion of the applicability of protective sweeps impaired Burton's consent in any meaningful way. However, no one has challenged the trial court's conclusion of facts regarding Burton's consent.

## 1. *Ferrier* did not apply to the initial contact and consent given

First, *Ferrier* warnings were not required prior to the officers entering Burton's home. 136 Wn.2d 103. In *Ferrier*, officers went to a suspect's home with the intention of searching it after receiving information regarding a possible marijuana grow operation being conducted in the home. Since the officers thought they would not be able to obtain a search warrant without including the name of their informant, the suspect's son, the officers instead devised a plan where they would do a "knock and talk" in an effort to convince Ferrier to allow them into the home. *Id.* at 106-07. The officers appeared at Ferrier's house wearing uniforms, black "'raid jacket[s],'" and vests emblazoned with the word "police." *Id.* at 107. In light of the "knock and talk's" sometimes unavoidable, inherently coercive nature, this court held that "article I, section 7 is violated whenever the authorities fail to inform home dwellers of their right to refuse consent to a warrantless search." *Id.* at 118.

Later, in *State v. Khounvichai*, this court clarified that *Ferrier* warnings are required only when law enforcement officers seek entry to conduct a consensual search for contraband or evidence of a crime. 149 Wn.2d 557, 566, 69 P.3d 862 (2003). These warnings are not required when the police are seeking entry into a home to question a resident in the course of investigating a crime. *Id.*

Here, the officers approached Burton's apartment as a result of Green's report of a violent robbery and assault committed by three people who were likely still in the apartment. At the time of initial contact, the officers intended only to question Burton about the alleged crime. They did not approach the apartment seeking to enter or intending to conduct a search. After Burton opened the door and saw the officers, she invited them in. 1 VRP (Aug. 17, 2017) at 28 (after officers assured Burton, "'You don't have to let us in,'" she responded, "'No, come on in'"). Accordingly, officers were not required to give Burton *Ferrier* warnings before entering the apartment since they were intending only to question her, not search her apartment without a warrant.

2. <u>Burton's unambiguous consent to officers searching her apartment makes it unnecessary to decide the applicability of *Buie* in nonarrest situations</u>

Second, Blockman contends that the protective sweep exception to the warrant requirement set forth in *Buie* is valid only if it occurs incident to arrest. 494 U.S. at 334. Relying on its rationale in *Terry*[4] and *Long*,[5] the *Buie* Court held

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "Stop-and-frisks" are not—and could not practically be—subject to Fourth Amendment's warrant requirement; rather, they must be analyzed under the Fourth Amendment's general prescription against unreasonable searches and seizures. *Id.* at 20. Officers need to have only reasonable suspicion, not probable cause, that defendant may be involved in criminal activity and may be armed. *Id.* at 24, 27, 30-31.

[5] *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). It is constitutional for an officer to search a passenger compartment where weapons could be hidden when the officer has reasonable suspicion to believe the person being stopped is dangerous and might have immediate access to weapons. *Id.* at 1049.

6

it is constitutional for law enforcement officers to either conduct a quick-look search of the spaces immediately adjoining the place of arrest without probable cause or reasonable suspicion or conduct a cursory sweep of a home incident to arrest where they have reasonable suspicion to believe the home is harboring a dangerous third person. *Id.*

We recognize that Division One's decision in this case created a split among the Court of Appeals concerning whether a *Buie* protective sweep warrant exception extends to nonarrest contexts. *Compare State v. Blockman*, 198 Wn. App. at 40, *with State v. Hopkins*, 113 Wn. App. 954, 959-60, 55 P.3d 691 (2002). However, because the issue before us is resolved by Burton's unequivocal consent to the officer's search, it is unnecessary for us to decide the split.[6]

---

[6] We also recognize the split among the federal courts. Several cases have held that the protective sweep warrant exception are per se invalid in nonarrest situations. For courts refusing to expand *Buie* to nonarrest situations, there is significant focus on how the expansion of the protective sweep doctrine could lead to drastic erosion of individual rights that probable cause and warrant requirements are meant to safeguard. George Dery & Michael J. Hernandez, *Turning a Government Search into a Permanent Power: Thorton v. United States and the "Progressive Distortion" of Search Incident to Arrest*, 14 WM. & MARY BILL RTS. J. 677, 680 (2005) ("In order . . . to ensure that the Fourth Amendment is upheld even under such stressful circumstances, a detached and neutral magistrate has to be placed between the individual and the police aiming to intrude on his or her rights.").

Considering the confrontational nature of arrests, the Tenth Circuit in *United States v. Torres-Castro* held protective sweeps are valid only when pursuant to an arrest. 470 F.3d 992, 997-98 (10th Cir. 2006); *see also United States v. Davis*, 290 F.3d 1239, 1242 n.4 (10th Cir. 2002); *United States v. Smith*, 131 F.3d 1392, 1396 (10th Cir. 1997). Similarly, the Ninth Circuit held in *United States v. Reid* that protective sweeps should not be justified in the absence of an arrest or lack of suspicion regarding the possible presence of a dangerous third party. 226 F.3d 1020, 1027 (9th Cir. 2000).

Meanwhile, other courts have extended the protective sweep doctrine to nonarrest situations. In *United States v. Daoust*, the First Circuit reasoned that the defendant's violent

We note, however, the officer's declaration to Burton that they "always do a protective sweep" and that it is "standard procedure" to do protective sweeps was erroneous. Despite differing interpretations regarding the scope of *Buie*, it is clear that protective sweeps are a limited exception to the warrant requirement. In order to conduct a valid protective sweep, officers who have reasonable suspicion to believe a home may harbor a dangerous third person may conduct a cursory sweep of a home. *Buie*, 494 U.S. at 334. Or, if the officers do not have probable cause or reasonable suspicion, they are permitted to conduct a quick-look search of the spaces immediately adjoining the place of arrest. *Id.* Here, the officer's indication of protective sweeps being standard procedure was improper and potentially misleading.

While courts are still undecided as to whether the protective sweep warrant exception explicated in *Buie* extends beyond arrest situations, this case is not the proper vehicle to reconcile the split. As a result of Burton's unambiguous consent

history, known gun possession, and residence in an isolated cabin provided the officers with the reasonable suspicion required to conduct the protective sweep. 916 F.2d 757, 759 (1st Cir. 1990); *see also United States v. Martins*, 413 F.3d 139, 150 (1st Cir. 2005). Considering the adversarial nature and risk of ambush in a suspect's home, the Ninth Circuit also held that the law enforcement's entry was pursuant to lawful consent and the subsequent protective sweep was valid. *United State v. Garcia*, 997 F.2d 1273, 1281-82 (9th Cir. 1993); *see also Leaf v. Shelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005); *United States v. Gould*, 364 F.3d 578, 584 (5th Cir. 2004), *abrogated by Kentucky v. King*, 563 U.S. 452, 464, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011).

to officers searching her apartment, it is unnecessary for us to decide the applicability of *Buie* in nonarrest situations.

### 3. Consent was given to conduct a valid protective sweep

Lawful consent is one of the few recognized exceptions to the warrant requirement. *Mathe*, 102 Wn.2d at 541 ("Consent to search establishes the validity of that search if the person giving consent has the authority to so consent."). Our court has set out three requirements for a valid consensual search: (1) the consent must be voluntary, (2) the consent must be granted by a party having authority to consent, and (3) the search must be limited to the scope of the consent granted. *State v. Hastings*, 119 Wn.2d 229, 234, 830 P.2d 658 (1992). Thus, officers must strictly abide by the scope of the proffered consent. *State v. Walker*, 136 Wn.2d 678, 682, 965 P.2d 1079 (1998). Accordingly, an officer who receives consent to enter the entryway of a home cannot exceed the scope of the consent and begin searching the rest of the home without cause.

Here, the trial court entered undisputed findings of fact.[7] Most notably, finding of fact 8 states, "Officer Hayward was invited by Ms. Burton to conduct a

---

[7] Findings of fact were entered by the court on June 16, 2016, after Blockman filed his initial appeal. The CrR 3.5 and 3.6 hearings were held on August 17, 2015. As noted by the Court of Appeals, written findings and conclusions are to be entered after a suppression hearing. However, the Court of Appeals cites *State v. Cruz*, 88 Wn. App. 905, 907 n.1, 946 P.2d 1129 (1997), stating, "In some cases we have accepted findings that are entered after a case is appealed as long as there is no prejudice to the defendant. That is true here." *Blockman*, 198 Wn.

protective sweep. Officer Hayward conducted a protective sweep to make sure no one would jump out and surprise them while he was questioning Ms. Burton. [His] gun was still in its holster when he conducted the protective sweep." CP at 252.

Burton, as the tenant of the apartment, had authority to consent to a search or sweep. Blockman, however, was not described as Burton's tenant or as someone who would have a valid expectation of privacy in the apartment. Knowing the officers came to her apartment to ask questions about the robbery and assault, Burton invited them in, stating, "'You can search everything.'" 1 VRP (Aug. 17, 2015) at 52. This presentation of facts, including Burton's consent to the officers' entry and protective sweep, was unchallenged.

There is no testimony or evidence suggesting Burton withdrew her invitation or intended to limit the scope of her consent. Had she withdrawn her consent at any point, the outcome may be different. As mentioned earlier, a search cannot exceed the proffered consent. *See State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999) ("To be valid, the consent must be voluntary and the search must not have exceeded the scope of consent."); *Walker*, 136 Wn.2d at 682.

---

App. at 36 (citation omitted). Blockman's counsel confirmed at oral argument that error was not assigned to the trial court's findings of fact. Wash. State Supreme Court oral argument, *State v. Blockman*, No. 94273-1 (Nov. 14, 2017), at 4 min., 54 sec. to 6 min., 5 sec., Washington State's Public Affairs Network, http://www.tvw.org.

Instead of revoking her consent, Burton continued to affirm it.[8] Based on these facts, Burton's consent fits within the consent exception to the warrant requirement.

CONCLUSION

Here, the officers were not required to provide *Ferrier* warnings upon their initial contact with Burton because they approached her apartment with the intent to question her about the alleged crime, not with the intention to search her home. Furthermore, although the issue of whether the protective sweep exception to the warrant requirement, set forth in *Buie*, extends to nonarrest encounters is still undecided, this is not the proper case to reconcile the confusion. Ultimately, Burton unambiguously consented to the sweep; a fact that was uncontested on appeal. Burton's unchallenged, unequivocal consent justified the protective sweep at issue. Therefore, we affirm the Court of Appeals.

---

[8] According to Officer Hayward's testimony, Burton opened the door and invited the officers into the living room, saying, "'I can't believe she called the cops'" and "'[y]ou can search everything. I don't have her money.'" 1 VRP (Aug. 17, 2015) at 41, 28. Hayward testified that initially he informed Burton, "'You don't have to let us in,'" to which she responded, "'No, come on in.'" *Id.* at 28. Later, Burton said, "You can search everywhere." *Id.* at 29 (explaining that Burton did not limit her scope and signed a consent to search without a warrant form).

González, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Madsen, J.

Owens, J.

Yu, J.

No. 94273-1

GORDON McCLOUD, J. (concurring)—According to the trial court's

unchallenged findings of fact, Patricia Burton consented to the search of her

apartment. Her consent provided the officers with the authority to conduct a

warrantless search. I therefore agree with the majority's decision to affirm the trial

court's order denying Hollis Blockman's motion to suppress evidence discovered

during that search.

The majority also correctly observes that the parties did not present the issue

of consent, but instead briefed the applicability of *Buie*[1] protective sweeps incident

to arrest to a nonarrest context. I agree with its description of the conflicting lines of

authority on that issue. I write separately only to explain that the legal principles and

privacy values identified by the majority compel a single resolution of that *Buie*

issue: *Buie* protective sweeps are impermissible when police enter based on the

consent exception to the search warrant requirement. The reason is that—as the

majority recognizes—the key attribute of the consent exception to the warrant

requirement is that the consentee defines the scope of that consent.

---

[1] *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990).

1

I therefore respectfully concur.

ANALYSIS

I.      Burton consented to the search of her apartment

The police did not have a warrant to search Burton's apartment. This court has repeatedly held, """"As a general rule, warrantless searches and seizures are per se unreasonable."""" *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999) (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980))). Thus, the first question in this case is whether one of the few, limited, and carefully defined exceptions to the warrant requirement permitted the search that led to Blockman's arrest.[2]

I agree with the majority that Burton consented to the search of her apartment. This court recognizes lawful consent as one of the few exceptions to the warrant requirement. *State v. Mathe*, 102 Wn.2d 537, 541, 688 P.2d 859 (1984) ("Consent to a search establishes the validity of that search if the person giving consent has the authority to so consent."); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 222,

---

[2] *See Arkansas v. Sanders*, 442 U.S. 753, 759-60, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979) ("[B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and 'the burden is on those seeking the exemption to show the need for it.'" (quoting *United States v. Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951), *abrogated by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991)).

93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). As discussed by the majority, there are three requirements for a valid consensual search: (1) the consent must be voluntary, (2) the consent must be granted by a party having authority to consent, and (3) the search must be limited to the scope of the consent granted. Majority at 9 (citing *State v. Hastings*, 119 Wn.2d 229, 234, 830 P.2d 658 (1992)). While there was contradictory testimony presented at the CrR 3.6 hearing, neither party challenged the trial court's ultimate finding that Burton consented to both the entry into and the sweep of the apartment.[3]

Burton, however, had the right to limit her consent and define the scope of any consent search. *See State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999) ("To be valid, the consent must be voluntary and the search must not have exceeded the scope of consent." (citing *Hastings*, 119 Wn.2d at 234)). And she did, by repeatedly affirming her consent to the officers' presence in her apartment and to the sweep conducted.[4] Therefore, I agree with the majority's conclusion that

---

[3] *See* Clerk's Papers at 251-52 (Findings of Fact).

[4] *See, e.g.*, 1 Verbatim Report of Proceedings (Aug. 17, 2015) at 26, 28, 41 (Burton opened the door and invited them into the living room, saying, according to Hayward, "'I can't believe she called the cops'" and "'[y]ou can search everything. I don't have her money,' that kind of thing"; Hayward testified that initially he informed Burton, "'You don't have to let us in,'" to which she responded, "'No, come on in.'"), 52 ("I didn't ask her for her consent to search at that point. She said, 'You can search everything.' I said: 'Okay, okay. Is there anyone else inside?'"), 29 ("And did she limit her stop of that search at any time?" Hayward answered, "No, she did not . . . And did you ask her to sign a consent

3

Burton consented to the search of her entire apartment and hence that the evidence

obtained during that search was admissible.

II.    *Buie* protective sweeps cannot be used in cases where the consent
       exception to the warrant requirement is used for entry

The majority continues that officers cannot conduct "protective sweeps" as

"standard procedure," majority at 8, any time they enter a home. I agree. This

limitation on such sweeps and searches is critical where, as here, entry is based on

consent. There are two reasons for this: first, *Buie*'s exception to the warrant

requirement did not extend that far (Section A, *infra*); and second, the consent

exception to the warrant requirement is based on the rule that the consentee gets to

limit the scope of his or her consent (Section B).

   *A. The* Buie *Court's holding was limited to protective sweeps in the
   incident-to-arrest situation*

*Buie* defines the United States Supreme Court's protective sweep doctrine in

a very limited way as follows:

> [*A*]*s an incident to the arrest* the officers could, as a precautionary
> matter and without probable cause or reasonable suspicion, look in
> closets and other spaces immediately adjoining the place of arrest from
> which an attack could be immediately launched. *Beyond that, however,
> we hold that there must be articulable facts* which, taken together with
> the rational inferences from those facts, would warrant a reasonably
> prudent officer in believing that the area to be swept harbors an

---

to search without a warrant form? . . . Yes, I did. . . . And did you see her sign that form? .
. . Yes, I did.").

individual *posing a danger to those on the arrest scene. This is no more and no less than was required in Terry and Long*, and as in those cases, we think this balance is the proper one.

494 U.S. at 334 (emphasis added). Thus, this *Buie* exception provides for two types of searches—but both are "incident to . . . arrest."

The first type is a quick "look"—with no probable cause or reasonable suspicion requirement—into spaces immediately adjoining the place of arrest that could conceal a person. That one is not at issue here.

The second type is a broader sweep for persons if the *Terry* and *Long* prerequisites are satisfied.[5] Those *Terry* and *Long* prerequisites require that a rational, fact-based inference can be made by a reasonably prudent officer that a dangerous individual is present. *Buie*, 494 U.S. at 325; *see also Long*, 463 U.S. at 1050 ("'[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" (alteration in original) (quoting *Terry*, 392 U.S. at 27)). That is the one the State argued in this case.

But the *Buie* Court limited both types of searches incident to arrest—the "look" and the broader "sweep"—to the context of an in-home arrest because "[t]he risk of danger *in the context of an arrest in the home* is as great as, if not greater

---

[5] *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed 2d 889 (1968); *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

than, it is in an on-the-street or roadside investigatory encounter." 494 U.S. at 333

(emphasis added). Despite this danger, the United States Supreme Court still kept

the parameters of such a protective sweep narrow by holding that "[a] 'protective

sweep' is a quick and limited search of premises, incident to an arrest and conducted

to protect the safety of police officer or others." *Id.* at 327. Thus, *Buie*'s exception

to the warrant requirement for searches "in the home" is limited to searches that are

"incident to arrest" and that also satisfy *Terry* and *Long*.

Nevertheless, there is substantial debate throughout state and federal courts

about *Buie*'s implications for sweeps without arrests. The Ninth[6] and Tenth Circuits[7]

have held that *Buie* protective sweeps must be incident to arrest. If we were to reject

that line of decisions and instead hold that *Buie* protective sweeps can be incident to

---

[6] The Ninth Circuit has taken two different approaches to these cases. The current precedent states that *Buie* protective sweeps are valid in "searches conducted immediately following a home arrest." *United States v. Lemus*, 582 F.3d 958, 961 (9th Cir. 2009). In the same case, the Ninth Circuit interpreted *Buie* to hold that protective sweep warrant exceptions are valid because "'unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'" *Id.* at 962 (quoting *Buie*, 494 U.S. at 333). *See, e.g., United States v. Reid*, 226 F.3d 1020, 1027 (9th Cir. 2000); *United States v. Noushfar*, 78 F.3d 1442, 1448 (9th Cir. 1996) (stating "[a] protective sweep may last 'no longer than it takes to complete the arrest and depart the premises" (quoting *Buie*, 494 U.S. at 335-36)). However, *United States v. Garcia*, 997 F.2d 1273, 1282 (9th Cir. 1993), noted that protective sweeps can occur "where officers possess a reasonable suspicion that their safety is at risk, even in the absence of an arrest." *United States v. Torres-Castro*, 470 F.3d 992, 997 (10th Cir. 2006) (collecting cases, including *Reid*, 226 F.3d at 1027, and *Garcia*, 997 F.2d at 1282). *Garcia* has been cited only once for its somewhat aberrant (in the Ninth Circuit) protective sweep holding, in *Mendez v. County of Los Angeles*, 815 F.3d 1178, 1191 (9th Cir. 2016), *vacated and remanded on other grounds*, __ U.S. __, 137 S. Ct. 1539, 198 L. Ed. 2d 52 (2017)). The Ninth Circuit's *Mendez* opinion did not apply the *Garcia* analysis to the case, but noted the intracircuit split and stated, "[T]he deputies' protective sweep argument fails for another reason. . . . [T]he deputies did not have the requisite suspicion of danger to justify a protective sweep." *Id.* So at least part of the Ninth Circuit views this as an open controversy.

[7] The Tenth Circuit also declined to extend the *Buie* doctrine to nonarrest situations, stating that "[f]ollowing *Buie*, we held that such 'protective sweeps' are only permitted incident to an arrest." *Torres-Castro*, 470 F.3d at 997 (noting "[w]hatever our view of the holdings in *Davis* and *Smith*, we [the panel] are not free to overrule those decisions and adopt the majority view allowing protective sweeps based on reasonable suspicion alone. Instead, we must conclude that a protective sweep is only valid when performed incident to an arrest—at least until an en banc panel of this court determines otherwise." (citation omitted)).

limited consent to enter, we would be giving Washingtonians less privacy protection in our state courts than they enjoy in our local federal courts. That can't be right: the Washington Constitution is more protective, not less protective, of our individual privacy rights than the federal constitution. *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) ("It is well established that article I, section 7 is qualitatively different from the Fourth Amendment and provides greater protections." (citing *State v. Athan*, 160 Wn.2d 354, 365, 158 P.3d 27 (2007)); *State v. O'Neill*, 148 Wn.2d 564, 584, 62 P.3d 489 (2003); *State v. Jackson*, 150 Wn.2d 251, 259, 76 P.3d 217 (2003)).

On the other hand, other circuits have stated that although the *Buie* decision arose from a sweep incident to arrest, nothing in *Buie* stated that a protective sweep would be unconstitutional if officers were in the residence for some other lawful reason. *United States v. Gould*, 364 F.3d 578, 581 (5th Cir. 2004) (en banc), *abrogated in part on other grounds by Kentucky v. King*, 563 U.S. 452, 464, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011).[8]

---

[8] For example, the First Circuit stated:

We hold, therefore, that police who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry. *See United States v. Gould*, 364 F.3d 578, 584-87 (5th Cir.2004) (en banc) (stating that a protective sweep may be justified so long as police did not enter illegally); *United States v. Taylor*, 248 F.3d 506, 513 (6th Cir.2001)

Division One's decision in this case, *State v. Blockman*, created a similar split

within the Washington Courts of Appeals over the *Buie* "protective sweep"

prerequisites. 198 Wn. App. 34, 40, 392 P.3d 1094, *review granted*, 188 Wn.2d

1014, 396 P.3d 341 (2017). Divisions Two and Three have limited the *Buie*

protective sweep exception to the search-incident-to-arrest context.[9] Pre-*Blockman*,

---

(holding that because officers can constitutionally secure an area while awaiting a search warrant to ensure that evidence will not be destroyed, "it follows logically that . . . the police may conduct a limited protective sweep [of that area] to ensure the safety of those officers"); *cf. United States v. Garcia*, 997 F.2d 1273, 1282 (9th Cir.1993) (permitting protective sweep when police were lawfully present in a home by consent); *United States v. Patrick*, [294 U.S. App. D.C. 393,] 959 F.2d 991, 996 (D.C.Cir.1992) (declaring, in the context of a consensual entry, that "[o]nce the police were lawfully on the premises, they were authorized to conduct a protective sweep").

*United States v. Martins*, 413 F.3d 139, 150 (1st Cir. 2005) (most alterations in original), *abrogated by Hill v. Walsh*, 884 F.3d 16, 23 (1st Cir. 2018).

[9] Division Three held,

While making a lawful arrest, officers may conduct a reasonable "protective sweep" of the premises for security purposes. . . . *Buie*, 494 U.S. [at] 334-35. . . . The scope of such a "sweep" is limited to a cursory visual inspection of places where a person may be hiding. *Id.* at 335. If the area immediately adjoins the place of arrest, the police need not justify their actions by establishing a concern for their safety. *Id.* at 334. However, when the "sweep" extends beyond this immediate area, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

*State v. Hopkins*, 113 Wn. App. 954, 959-60, 55 P.3d 691 (2002) (footnote omitted); *see also State v. Boyer*, 124 Wn. App. 593, 601, 102 P.3d 833 (2004) ("In Washington, as in most other jurisdictions, the protective sweep has not be extended to the execution of search

Division One had explicitly stated that protective sweeps are limited to searches incident to arrest, stating that "[h]ere, the deputies did not arrest Dennis before the protective sweep. Thus, the threshold requirement of a protective sweep is not met under the circumstances of this case." *State v. Dennis*, No. 70262-9-I, slip op. at 9 (Wash. Ct. App. Aug. 4, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/702629.pdf).[10]

Division One's decision in *Blockman*, which extended *Buie* protective sweeps to the nonarrest situation, conflicts with all of those prior Court of Appeals cases. 198 Wn. App. 34. In fact, Division One's *Blockman* opinion relied entirely on selected federal cases and did not cite (either approvingly or disapprovingly) to Division Two's or Three's or its own prior treatment of *Buie* protective sweeps.[11]

warrants."). Citing Division Three's decision in *Hopkins*, Division Two has similarly held, "Police may conduct a protective sweep of the premises for security purposes as part of the lawful arrest of a suspect." *State v. Sadler*, 147 Wn. App. 97, 125, 193 P.3d 1108 (2008) (citing *Hopkins*, 113 Wn. App. at 959).

[10] *Dennis* continued by analyzing whether, if Washington were to adopt a nonarrest standard for the second type of *Buie* protective sweeps, the State could point to facts indicating that the "'area involved in the protective sweep may harbor an individual who poses a danger to those on the scene.'" Slip op. at 13 (quoting *State v. Sedler*, 147 Wn. App. 97, 125-26, 193 P.3d 1108 (2008)). The court then stated that "we need not address hypothetical situations unsupported by any evidence on the record." *Id.*

[11] In its analysis, Division One cited to several federal cases, including *Buie*, 494 U.S. 325; *Long*, 463 U.S. 1032; *Terry*, 392 U.S. 1; *Gould*, 364 F.3d 578; *Taylor*, 248 F.3d 506; and *Patrick*, 959 F.2d 991. *Blockman*, 198 Wn. App. at 38-40.

10

The leading and controlling federal case on this issue, though, is *Buie*. And the "protective sweep" employed in this case goes far beyond the incident to arrest sweep approved in *Buie*. This is impermissible. We have repeatedly stated that """[a]s a general rule, warrantless searches and seizures are per se unreasonable."""" *Ladson*, 138 Wn.2d at 349 (quoting *Hendrickson*, 129 Wn.2d at 70 (quoting *Houser*, 95 Wn.2d at 149)). The few, limited, preexisting exceptions to the warrant requirement form a finite list: "[e]xceptions to the warrant requirement fall into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and *Terry* investigative stops." *Id.* at 349-50 (citing *Hendrickson*, 129 Wn.2d at 71 (citing Robert F. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. PUGET SOUND L. REV. 411, 528-80 (1988))); *see also* Charles W. Johnson & Debra L. Stephens, *Survey of Washington Search and Seizure Law: 2013 Update*, 36 SEATTLE U. L. REV., at i, 1713 (2013). Expansions beyond *Buie*'s protective sweep incident to arrest to the limited consent-to-enter context are not included in this list.

---

Division One also briefly mentioned *Hopkins*, 113 Wn. App. 954, noting that the sweep in that case was incident to arrest—but was held unconstitutional because there was no articulable facts that would warrant a sweep—and Division Three had no cause to decide the issue of *Buie*'s application outside of an incident-to-arrest context. 198 Wn. App. at 40; *see also Hopkins*, 113 Wn. App. at 959 n.3. Division One did not cite any of the Washington Court of Appeals decision that address this issue directly. *See supra* note 10.

11

In fact, we have already implicitly rejected such an expansion of the *Buie* protective sweep exception. In *State v. Eserjose*, officers—acting on a tip that James Eserjose and Joseph Paragone were responsible for a robbery—went to the suspect's house at 1:30 a.m. without a warrant. 171 Wn.2d 907, 910, 258 P.3d 172 (2011) (lead opinion). When Eserjose answered the door, the officers asked if Paragone was home. Eserjose responded that Paragone was upstairs and that he would go get Paragone. Eserjose then went upstairs, leaving the door open. Eserjose's father invited the officers into the house, saying he wanted to close the door to keep out the cold air. The officers stood at the entryway for a minute, but eventually decided to go upstairs and arrest Paragone and Eserjose. *Id.* The trial court's conclusions of law stated that this was an unconstitutional arrest—that the officers had probable cause to arrest Paragone and Eserjose, but that going upstairs impermissibly exceeded the scope of consent—and the State did not challenge this conclusion on appeal.[12] *Id.* at 911. This court accepted the trial court's conclusion of law and analyzed the admission of Eserjose's subsequent confession—agreeing with the trial court that

---

[12] This case was a direct appeal from the superior court, and none of the parties argued that the officers' move from the entryway to the upstairs area was a *Buie* protective sweep.

"the arrest was unlawful."[13] *Id.* at 912, 930 (Madsen, C.J., concurring) ("any illegality occurred when the deputies exceeded the scope of Eserjose's father's consent and went upstairs"), 935 (C. Johnson, J., dissenting) ("the constitutional violation here is not at issue"). If this court were to accept the state's argument that *Buie* "protective sweeps" could be expanded to include searches incident to a limited consent to enter, it would essentially overrule *Eserjose*.

### B. The Buie *Court did not disturb the rule that one, like Burton, who gives officers consent to enter or search retains the right to define the scope of that consent*

Such an expansion would also conflict with the rule that the scope of a consent to enter or search must be strictly respected. Under controlling law of this court, Burton, like all home residents, had the right to define the scope of her consent to enter or search. We have explicitly held that "[a] search exceeding the scope of consent is invalid." *Bustamante-Davila*, 138 Wn.2d at 982 (citing *State v. Murray*, 84 Wn.2d 527, 527 P.2d 1303 (1974)). And as discussed above, in *Eserjose*, we have applied this general rule to a factual setting analogous to the one presented here— we stated that the arrest that occurred when the officers in that case entered pursuant

---

[13] Eserjose did not confess until arriving at the sheriff's office, and the question was whether the trial court erred in admitting Eserjose's confession—not whether the upstairs sweep was constitutional or not.

13

to consent, but then exceeded the scope of consent by going upstairs to conduct a sweep for persons was unconstitutional. *See supra* pp. 11-13.

Allowing *Buie* protective sweeps after police obtain limited consent to enter would deprive the consentee—in this case, Burton—of her constitutional right to retain control of the scope of her consent.

Federal courts have similar concerns with such an expansion of *Buie*. The Second Circuit has stated, "[W]hen police have gained access to a suspect's home through his or her consent, there is a concern that generously construing *Buie* will enable and encourage officers to obtain that consent as a pretext for conducting a warrantless search of the home." *United States v. Gandia*, 424 F.3d 255, 262 (2d Cir. 2005). That *Gandia* court further explained,

> "[P]rotective sweeps following a consent entry may in certain circumstance pose Fourth Amendment concerns not present in cases where the initial entry is pursuant to a warrant. For example, concerns might arise respecting a consent to entry requested for a stated common purpose but actually intended not for that purpose but rather for the purpose of gaining access in order to then make a protective sweep of the entire home for unrelated reasons and thus circumvent the warrant requirement."

*Id.* at 262-63 (alteration in original) (quoting *Gould*, 364 F.3d at 589). Our controlling decisions holding that the consentee gets to control the scope of consent given solves that problem.

### C. Any potential danger to the officers could have been resolved without eroding Burton's right to define the scope of consent

Unlike in *Buie*, the *Blockman* officers did not face the same disadvantage of being on their "adversary's 'turf'" at an arrest scene. *Buie*, 494 U.S. at 333. As the Second Circuit noted in a similar case, "Indeed, the entrance or hallway of the building, or their own police vehicle, would have fulfilled their stated purposes." *Gandia*, 424 F.3d at 263. Had the officers felt concerned for their safety in Burton's home, they could have interviewed Burton in a number of different locations, rather than use a *Buie* protective sweep. Or, as in this case, the officers could have asked for and received permission to search.[14]

CONCLUSION

I agree with the majority that the trial court correctly denied the motion to suppress because Burton consented to the officers' entry into and sweep of her home. I also agree with its decision to decline the State's invitation to hold that the *Buie* exception to the warrant requirement should be expanded to conflict with controlling case law holding that a consentee retains the ability to define the scope of his or her consent to enter or search.

---

[14] The Second Circuit also made this observation, stating, "There was also nothing preventing the officers from making explicit any concern they may have had about the presence of others in Gandia's apartment and seeking his express permission for a search of other rooms." *Gandia*, 424 F.3d at 263.

15

I therefore concur.

McCloud, J.

Wiggins, J.